24 Cal.Rptr.3d 582 (2005)
125 Cal.App.4th 1443
In re GLORIANNA K., a Person Coming Under the Juvenile Court Law.
Los Angeles County Department of Children and Family Services, Plaintiff and Respondent,
v.
Jennie K., Defendant and Appellant.
No. B175163.
Court of Appeal, Second District, Division Four.
January 4, 2005.
*583 Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.
Larry D. Cory, Assistant County Counsel, and Aleen L. Langton, Deputy County Counsel, for Plaintiff and Respondent.
HASTINGS, J.
Mother Jennie K. appeals from a juvenile court order terminating her parental rights to minor Glorianna K. pursuant to Welfare and Institutions Code section 366.26.[1] This order followed our reversal of a prior order terminating parental rights on the ground that the juvenile court did not ensure compliance by the Department of Children and Family Services (DCFS) with the notice requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). Appellant contends that again the juvenile court has not secured ICWA compliance. DCFS requests that we take additional evidence, which is contested by appellant. We deny the motion. We reverse and remand for the juvenile court to enter a new termination order only if it determines that DCFS has complied with the ICWA notice requirements.

FACTS
In June 2003, the juvenile court entered an order terminating appellant's parental rights to her daughter pursuant to section 366.26. On October 20, 2003, we reversed the order, and remanded the matter to the juvenile court "for the sole purpose of investigating American Indian heritage and providing" ICWA notice to tribes and/or the Bureau of Indian Affairs (BIA). We directed the juvenile court to reinstate its section 366.26 order if no tribe indicates that the subject minor is subject to ICWA.
On remand, the juvenile court ordered DCFS to provide ICWA notice to BIA and the Apache Nation, and the court continued the matter to January 7, 2004.
The report prepared for the January 7 hearing reflects that appellant claimed her father is a full-blooded Apache, probably a registered tribe member. It states that notices and requests for confirmation of the minor's Indian status were mailed but none of the copies of the notices and requests was attached to the report. Nor did DCFS attach copies of certified mail receipts. The following eight tribes were reported to have responded that the minor is not eligible for tribe membership: (1) White Mountain Apache, (2) San Carlos Apache, (3) Mescalero Apache Tribal *584 Council, (4) Yavapai-Apache Nation, (5) Fort Sill Apache Council, (6) Jicarilla Apache Nation, (7) Tonto Apache Reservation, and (8) Apache Tribe of Oklahoma. A letter of November 3, 2003, from the Mescalero Apache Tribe was also attached. It stated that the subject minor was not eligible to be a member of the tribe.
Noting that it did not receive one of the nine responses from the ICWA notices sent, the juvenile court continued the matter to February 4, 2004.
The report for February 4 stated that in response to the ICWA notices all the tribes responded that the subject minor does not qualify to become a member of any of the tribes. Attached to the report were multiple responses, including the same November 3, 2003 letter from the Mescalero Apache Tribe.
The juvenile court was apparently not satisfied with the evidence presented and at the February 4 hearing it ordered DCFS "to further verify ICWA eligibility." The matter was continued to March 24, 2004.
The report for March 24 stated that on March 1, 2004, the social worker remailed notices and requests for confirmation of the child's status to the eight Apache tribes initially referenced in the report for January 7. On the same day, DCFS noticed a ninth Apache tribe, the Fort McDowell Mohave Apache tribe, reporting that the notice was by certified mail or return receipt requested. On March 5 and March 9, the social worker contacted the nine Apache tribes "to assure that research was done on maternal grandfather" regarding his possible membership or eligibility for membership in an Apache tribe. On March 1, 2004, the social worker left a telephone message with a maternal aunt to inquire about the family's alleged Apache affiliation. The aunt contacted the social worker on March 12.
Attached to the report for the March 24, 2004 hearing are ICWA notices sent to the nine tribes, the BIA and the Office of Tribal Services by certified mail, return receipt requested, each dated March 1, 2004. Also attached are requests for confirmation of the minor's Indian status, if any, sent to the same nine tribes, the BIA and the Office of Tribal Services, also on March 1. The report attached copies of certified receipts indicating mail delivery on March 5, 2004, to the Fort Sill Apache Tribe of Oklahoma and the Fort McDowell Mohave Apache tribe, and copies of certified receipts indicating mail delivery on March 4, 2004, to the San Carlos Tribal Council, the Tonto Apache Tribal Council and the Yavapai-Apache Community Council. DCFS did not attach to its report any evidence of delivery of the March 1 certified mail to the other four tribes.
Also attached to the report for March 24 are ICWA notices and Indian status confirmation requests sent on March 12 to the same entities identified in the March 1 mailings. Copies of certified mail receipts are also attached to the March 24 DCFS report, but there are no copies of certified receipts indicating mail delivery of the March 12 ICWA notices and requests for Indian status confirmation.
On March 24, DCFS filed a form titled "Information for Court Officer." It stated that the Fort Sill Apache, San Carlos Apache and Tonto Apache tribes responded that the subject minor is not enrolled or eligible for enrollment in those tribes. DCFS also submitted copies of letters from these three tribes.
Also filed on March 24 was a letter written by a Karen M. on behalf of the minor's maternal side of the family. Karen wrote that the maternal aunt had obtained death certificates to help research the family's American Indian heritage and *585 that she had given the social worker this information. She also told the social worker "about the importance of notifying the Apache tribes with this new information.... [¶] When I get the responses from the tribes I will file them with the court."
Apparently not waiting for further confirmation from Karen M., on March 24, 2004, the juvenile court found that DCFS had complied with the ICWA notice requirements and noted that the tribes "do not wish to intervene." It entered an order reinstating its June 26, 2003 order terminating appellant's parental rights under section 366.26.

DISCUSSION
At issue is whether DCFS has now complied with the ICWA notice requirements. Although DCFS argues in its respondent's brief that ICWA was satisfied, it requests that we take additional evidence proffered to the court in September 2004 establishing that notice was accomplished. Appellant objects to the request, contending that the proffered evidence is not properly authenticated. She also contends that the evidence was proffered to the court in an ex parte proceeding at which she was not present to object. Before addressing the request to take evidence, we review relevant ICWA law.
ICWA entitles an Indian tribe to intervene at any point in a state juvenile dependency proceeding if the minor who is the subject of the proceeding qualifies as an "Indian child." (25 U.S.C. § 1911(c).) An Indian child is an unmarried minor who is either a member of an Indian tribe or eligible for membership. (Cal. Rules of Court, rule 1439(a)(1), citing 25 U.S.C. § 1903.) "Determination of tribal membership or eligibility for membership is made exclusively by the tribe." (Cal. Rules of Court, rule 1439(g).)
Subdivision (a) of 25 United States Code section 1912 states in pertinent part: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking ... termination of parental rights ... shall notify ... the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of ... the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to ... the tribe. No ... termination of parental rights proceeding shall be held until at least ten days after receipt of notice by ... the tribe or the Secretary." "If the tribe is unknown, the notice must be given to the Bureau of Indian Affairs ..., as agent for the Secretary of the Interior. [Citations.]" (Dwayne P. v. Superior Court (2002) 103 Cal.App.4th 247, 253, 126 Cal.Rptr.2d 639.)
Both the juvenile court and DCFS have an affirmative duty to inquire whether a child declared a dependent minor of the juvenile court qualifies as an Indian child for ICWA purposes. (In re Nikki R. (2003) 106 Cal.App.4th 844, 848, 131 Cal.Rptr.2d 256.) It is the duty of the juvenile court to receive evidence of the notice efforts by DCFS and to determine if they comply with ICWA. (Nikki R., at p. 852, 131 Cal.Rptr.2d 256.) The juvenile court may not rely on mere representations that proper notice was given; there must be a court record of the notice documents. (In re Asia L. (2003) 107 Cal. App.4th 498, 506-509, 132 Cal.Rptr.2d 733.) "When proper notice is not given under the ICWA, the court's order is voidable. (25 U.S.C. § 1914.)" (Dwayne P. v. Superior Court, supra, 103 Cal.App.4th at p. 254, 126 Cal.Rptr.2d 639.)
*586 Appellant contends that the record does not contain sufficient proof that the Apache tribes received the requisite ICWA notices sent on March 12, 2004. She points out that DCFS failed to file any executed return receipts or responses from the tribes regarding the March 12, 2004 mailings. DCFS concedes that on March 24, when the juvenile court reinstated its order terminating parental rights, "it had not confirmed that the BIA and Apache tribes had received the notices sent to them on March 12, 2004." It is this gap in the record which is the subject of the request by DCFS that we take additional evidence. DCFS argues that the additional evidence will suffice to prove proper notice was given and that "any premature orders made by the juvenile court were harmless."
The request that we take additional evidence attaches three exhibits. Exhibit 1 is a form identified as "Information for Court Officer," dated September 28, 2004, with attachments. The attachments are: a March 22, 2004 letter from the San Carlos Apache Tribe stating the subject minor is ineligible for tribal membership; and March 15 and March 16 postal return receipt forms sent to the Yavapai-Apache Community Council, Tonto Apache Tribal Council, Fort Sill Apache Tribe of Oklahoma, White Mountain Apache Tribal Council, Fort McDowell Mohave Apache, Apache Tribe of Oklahoma, Jicarilla Apache Tribe and the BIA. Exhibit 2 is a September 29, 2004 minute order which states that the evidence "indicates that the above tribes received notice of the March 24, 2004 hearing." Exhibit 3 is a September 30, 2004 minute order which states the juvenile court received return receipts for the Fort Sill Apache Tribe of Oklahoma and the White Mountain Apache Tribal Council, and that the "above indicates that these two tribes received notice of the March 24, 2004 hearing."
The minute order of September 29, similar to the minute order of September 30, has the following entries as appearances:
"PARTIES
"04: MO01 [Mother]: JENNIE [K.]
"Court appointed Attorney, CARRIE CLARKE [bar# 150031], represents the mother.
"04: DP01 [Defacto Parent]: CHELIE [M.]
"Court appointed Attorney, PETER FERRERA [bar# 167336], appears and represents the defacto parent.
"04: FA01 [Father]: RONALD V.[G.]
"Court appointed Attorney, MICHAEL J. KRETZMER [bar# 110785], represents the father. (APPEAL IS PENDING.)
"ALEEN LANGTON, COUNTY COUNSEL IS PRESENT TODAY." (Respondent's motion to take additional evidence, Exhibit 2, italics added.)
Because the minute orders identify only the attorneys for the de facto parent and the County Counsel as being present, we must conclude neither appellant nor her counsel was present. Nor is there any indication in the minute order that appellant or her counsel was given notice of these hearings.
Appellant is correct that none of the items attached as Exhibit 1 to the request is authenticated. The "Information For Court Officer" form has no declaration or affirmation attesting to the attached documents and the attached copies themselves have no such authentication.
Taking additional evidence on appeal is governed by Code of Civil Procedure section 909, which, as pertinent, states: "In all cases where trial by jury is not a matter of right ..., the reviewing court ... may for the purpose of making the factual determinations or for any other purpose in *587 the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, and may give or direct the entry of any judgment or order and may make any further or other order as the case may require. This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court except where in the interests of justice a new trial is required on some or all of the issues."
"It has long been the general rule and understanding that `an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.] This rule reflects an `essential distinction between the trial and the appellate court ... that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law....' [Citation.] The rule promotes the orderly settling of factual questions and disputes in the trial court, provides a meaningful record for review, and serves to avoid prolonged delays on appeal. `Although appellate courts are authorized to make findings of fact on appeal by Code of Civil Procedure section 909 ..., the authority should be exercised sparingly. [Citation.] Absent exceptional circumstances, no such findings should be made....' [Citations.] [¶] There is no blanket exception to the general rule for juvenile dependency appeals." (In re Zeth S. (2003) 31 Cal.4th 396, 405, 2 Cal.Rptr.3d 683, 73 P.3d 541, italics omitted.)
Hence, "[t]he power to invoke [section 909] should be exercised sparingly, ordinarily only in order to affirm the lower court decision and terminate the litigation, and in very rare cases where the record or new evidence compels a reversal with directions to enter judgment for the appellant [citation]." (Monsan Homes, Inc. v. Pogrebneak (1989) 210 Cal.App.3d 826, 830, 258 Cal.Rptr. 676, italics added, disagreed with on another point in Passavanti v. Williams (1990) 225 Cal.App.3d 1602, 1607-1608, fn. 5, 275 Cal.Rptr. 887.)
Here, appellant objects to the evidence on the basis it is not authenticated, a valid objection. (See Evid.Code, §§ 400-403.) This is compounded by the fact that neither appellant nor her counsel was in attendance on either date to test the authenticity of the evidence. The trial court is in the best position to determine these issues. We conclude that remand is necessary for the trial court to address these issues. We deny respondent's motion to take additional evidence.
But even if we were to receive the evidence, there is still a question whether the Mescalero Apache tribe received appropriate notice of the March 24 proceeding. There is no certified receipt or response from its tribal council relating to the March 12 notices. The letter from the Mescalero tribe of November 3, 2003, stating that the minor is not eligible to become a member of that tribe, is insufficient to establish notice to that tribe. There is no copy of the ICWA notice provided to the tribe in connection with the earlier notice. Thus, we have no information in the record that the Mescalero tribe received information about the maternal grandfather through whom Indian ancestry is claimed.

CONCLUSION
The motion to take additional evidence is denied, and the juvenile court order terminating parental rights is reversed and remanded for the juvenile court for further proceedings. If the juvenile court does not find proper ICWA notice was given to all the tribes, the court shall order appropriate *588 notice be given. If the court determines that no further notices need be given, all previous findings and orders shall be reinstated and are affirmed.
We concur: EPSTEIN, P.J., and CURRY, J.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.