[No. D047094. Fourth Dist., Div. One. May 17, 2006.]

In re FRANCISCO W., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
EARL W., Defendant and Appellant.

**COUNSEL**

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and L. David Casey, Deputy County Counsel, for Plaintiff and Respondent.

Andrea Renee St. Julian, under appointment by the Court of Appeal, for Minor.

OPINION

**HUFFMAN, J.**—In this appeal of the termination of parental rights based on noncompliance with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.), we are asked to reexamine our practice of limited reversals and remands in which we instruct the juvenile court to correct the ICWA notice defect and reinstate the prior judgment of termination if no Indian tribe chooses to intervene in the proceeding.

Earl W. and appellate counsel for his dependent child, Francisco W., contend that we should depart from our usual practice in ICWA cases and reverse the judgment without limitation, thereby allowing the juvenile court to revisit dependency issues outside ICWA. Francisco's counsel claims such limited reversals (1) violate due process, (2) are inconsistent with a child's best interests, and (3) prevent the juvenile court from considering changes in the child's circumstances concerning his or her adoptability. Earl has joined in and adopted by reference the brief submitted by Francisco's counsel. (Cal. Rules of Court, rule 13(a)(5).)[1]

## PROCEDURAL AND FACTUAL BACKGROUND

On the night of November 3, 2003, Earl brought his wife Corina L. to the maternal grandmother's house and refused to give Corina a key to their residence.[2] An argument ensued. When Earl drove away, Corina, who was holding 11-month-old Francisco, started chasing her husband. Corina fell and dropped Francisco on a neighbor's lawn. Corina continued to pursue Earl, leaving Francisco on the grass. The maternal uncle found Francisco and brought him to the maternal grandmother's house. The maternal grandmother refused to give Francisco to Corina until the police responded because she feared the child was at risk. The paternal grandmother told the social worker that she had Native Indian heritage through the Cherokee tribe.

On November 6, 2003, the San Diego County Health and Human Services Agency (Agency) filed a dependency petition on behalf of Francisco, alleging he was at substantial risk of harm because his parents failed to adequately supervise and protect him. (Welf. & Inst. Code, § 300, subd. (b).)[3] The original petition listed Earl as an alleged father.

---

[1] All rule references are to the California Rules of Court.

[2] Corina is not a party to this appeal and will be discussed only as relevant to the appeal.

[3] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

In his paternity questionnaire, Earl indicated he possibly had Cherokee heritage. The court ordered paternity tests and deferred ICWA findings until it received the test results. The paternal grandmother, along with numerous relatives, attended the detention hearing.

Also in November, the social worker sent ICWA notices to the Bureau of Indian Affairs (BIA) and the three federally recognized Cherokee tribes. The boxes in the child family history section of the form were largely left blank, and the social worker did not include any background information (e.g., birth date, birthplace) for the paternal grandmother even though she had made herself available.[4]

On December 1, 2003, Corina submitted to the petition, which the court sustained. The court declared Francisco a dependent child, placed him in the maternal grandmother's home and ordered the parents to comply with their case plans.[5] The paternal grandmother attended the jurisdictional hearing.

On January 22, 2004, Agency received a response from the Cherokee Nation of Oklahoma, stating the tribe did not consider Francisco to be an Indian child based on the information supplied to it.

At the six-month review hearing on June 1, 2004, the court ordered six more months of reunification services. The court also ordered Agency to renotice the Cherokee tribes for the scheduled 12-month review hearing in December.

In August 2004, Agency mailed notices to the BIA and the three Cherokee tribes for the second time. The record on appeal contains only a copy of the notice sent to the BIA. The name of the paternal grandfather and his "Cherokee" tribal affiliation were included in this notice, but not his birth date or birthplace. Most of the boxes requesting information were marked "unknown" as opposed to being left blank as they were in the first round of notices. Neither copies of the notices sent to the Cherokee tribes nor certified mail receipts showing when the tribes received the second notices are included in the record. The BIA responded that it needed more information to determine if Francisco was an Indian child. The United Keetoowah Band of

---

[4] On the form sent to the Cherokee Nation of Oklahoma, the name of the paternal grandmother was not listed.

[5] The court ordered Earl to comply with his case plan even though the paternity test results had not been received and he continued to be listed as an alleged father on the petition. On December 22, 2003, after receiving the paternity test results, the court amended the petition to list Earl as the biological father.

Cherokee Indians of Oklahoma and the Eastern Band of Cherokee Indians indicated that based on the information supplied to them, Francisco was not a member of their respective tribes and they would not intervene.

Subsequently, Earl and Corina moved to Ohio to live with the maternal grandfather. Francisco continued to reside with his maternal grandmother in San Diego.

On January 4, 2005, the court ordered Agency to again send out ICWA notices to the Cherokee tribes because the court file did not contain copies of the notices previously sent. Again, in the new round of notices, most of the boxes requesting information in the pertinent form were marked "unknown." The record indicates the Cherokee Nation received the notice on January 17, and the Eastern Band of Cherokee Indians received the notice on January 18. The record does not contain a certified mail receipt for the United Keetoowah Band of Cherokee Indians.

On January 26, 2005, the court found the Cherokee tribes were properly noticed. On February 2, the court found ICWA did not apply after Agency indicated no tribes had responded to the latest batch of notices.

On February 10, 2005, the court also terminated services and set a section 366.26 hearing.

Agency assessed Francisco as likely to be adoptable, characterizing him as an "adorable[] and sociable" two-year-old in good health, who was attached to his caregiver. For the previous 18 months, Francisco had been in the home of his caregiver, who wanted to adopt him. In addition to the caregiver, there were 18 other approved adoptive homes willing to adopt a child with Francisco's characteristics.

On July 19, 2005, the court found, by clear and convincing evidence, that it was likely Francisco would be adopted if parental rights were terminated, none of the statutory exceptions to adoption existed in this case, and adoption was in Francisco's best interest. The court terminated parental rights.

Earl filed a timely notice of appeal.

In January 2006, attorneys for Earl, Agency and Francisco signed a joint application and stipulation for reversal of judgment. The stipulation called for us to reverse the judgment and remand the matter with directions to order

Agency to renotice BIA and the three Cherokee tribes in accordance with ICWA and case law. The stipulation also provided that if no tribe claimed Francisco as an Indian child, the judgment terminating parental rights would be reinstated.

On February 6, 2006, we granted the request by Francisco's counsel to withdraw his consent to the stipulated reversal and ordered the stipulation withdrawn. Counsel for Earl also filed a request to withdraw his consent for the stipulated reversal.

## DISCUSSION

## I

### ICWA VIOLATIONS AND NEED FOR REVERSAL ARE NOT DISPUTED

Earl contends the juvenile court erred by proceeding with the section 366.26 hearing because the ICWA notices sent to the BIA and the Cherokee tribes were insufficient. Earl also contends there was insufficient evidence supporting the court's finding that timely ICWA notice had been given.

In 1978, Congress enacted ICWA, which allows an Indian tribe to intervene in dependency proceedings, to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families." (25 U.S.C. § 1902.)

ICWA sets forth specific notice requirements: "[W]here the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify . . . the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a).)

If the tribe's identity cannot be determined, notice must be given to the BIA. (25 U.S.C. § 1912(a).) The Indian tribe determines whether the child is an Indian child. (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 470 [99 Cal.Rptr.2d 688].) " 'A tribe's determination that the child is or is not a member of or eligible for membership in the tribe is conclusive.' " (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 255 [126 Cal.Rptr.2d 639].)

■ Notice must be sent when there is reason to believe the child may be an Indian child. (Rule 1439(f)(5).) "[T]he juvenile court needs only a suggestion of Indian ancestry to trigger the notice requirement." (*In re Nikki R.* (2003) 106 Cal.App.4th 844, 848 [131 Cal.Rptr.2d 256].)

■ ICWA notice requirements are strictly construed. (*In re Karla C.* (2003) 113 Cal.App.4th 166, 174 [6 Cal.Rptr.3d 205].) The notice sent to the BIA and/or Indian tribes must contain enough information to be meaningful. (*Id.* at p. 175.) The notice must include: if known, (1) the Indian child's name, birthplace, and birth date; (2) the name of the tribe in which the Indian child is enrolled or may be eligible for enrollment; (3) names and addresses of the child's parents, grandparents, great grandparents, and other identifying information; and (4) a copy of the dependency petition. (*Ibid.*) To enable the juvenile court to review whether sufficient information was supplied, Agency must file with the court the ICWA notice, return receipts and responses received from the BIA and tribes. (13 Cal.App.4th at pp. 175, 178–179.)

It is essential to provide the Indian tribe with all available information about the child's ancestors, especially the ones with the alleged Indian heritage. (*In re Louis S.* (2004) 117 Cal.App.4th 622, 631 [12 Cal.Rptr.3d 110].) Notice to the tribe must include available information about the maternal and paternal grandparents and great-grandparents, including maiden, married and former names or aliases; birthdates; place of birth and death; current and former addresses; tribal enrollment numbers; and other identifying data. (*Id.* at p. 630.)

■ Under ICWA, no foster care placement or termination of parental rights proceeding may be held until at least 10 days after the tribe receives notice. (25 U.S.C. § 1912(a); see also rule 1439(h).) The court must wait at least 60 days following the sending of notice to determine that ICWA does not apply based on the lack of a "determinative response to the notice." (Rule 1439(f)(6).)

Agency concedes that the juvenile court's rulings regarding the adequacy of the ICWA notices were erroneous. We agree. Even though Agency sent three sets of notices, none of them included sufficient information that would allow the tribes or the BIA to determine Francisco's membership or eligibility for membership. (*In re Karla C., supra,* 113 Cal.App.4th at p. 175; *In re*

*Louis S.*, *supra*, 117 Cal.App.4th at pp. 630–631.) These defects persisted even though Agency easily could have contacted the paternal grandmother for additional pertinent information.[6]

## II

### *PARTIES DISPUTE PROPRIETY OF LIMITED REVERSALS IN ICWA CASES*

At issue is the propriety of our practice—as well as that of our colleagues in various other districts—in dependency cases with ICWA notice irregularities to issue limited reversals in which we order the judgment to be reinstated if no Indian tribe intervenes after proper notice is given. As explained *post*, we conclude this practice is legally authorized, consistent with the best interests of children, and in keeping with fundamental principles of appellate practice. Further, contrary to the positions advanced by Earl's and Francisco's appellate counsel, this approach does not infringe upon due process rights and does not—particularly with the recent enactment of statutory provisions— prevent the juvenile court from considering changes in the dependent child's circumstances concerning his or her adoptability.

■ As an appellate court, we have the power to select among several permissible dispositions of a case on appeal, which are set forth in section 43 of the Code of Civil Procedure. The statute, which dates back to 1872, provides that a reviewing court has authority to "affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had." (Code of Civ. Proc., § 43.) Moreover, "[i]t is a firmly established principle of law that '[t]he appellate courts have power to order a retrial on a limited issue, if that issue can be separately tried without such confusion or uncertainty as would amount to be a denial of a fair trial.' [Citation.] The underlying rationale is easy to discern: To require a complete retrial when an issue could be separately tried without prejudice to the litigants would unnecessarily add to the burden of already overcrowded court calendars and could be unduly harsh on the parties." (*Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 776 [63 Cal.Rptr.2d 859, 937 P.2d 290].)

■ When a judgment is reversed with directions, the appellate court's order is contained in its remittitur, which revests the jurisdiction of the

---

[6] The juvenile court also did not wait the mandatory 60 days under rule 1439(f)(6) when it declared ICWA did not apply on February 2, 2005.

subject matter in the lower court and defines the scope of the lower court's jurisdiction. "The order of the appellate court as stated in the remittitur, 'is decisive of the character of the judgment to which the appellant is entitled. The lower court cannot reopen the case on the facts, allow the filing of amended or supplemental pleadings, nor retry the case, and if it should do so, the judgment rendered thereon would be void.' [Citation.]" (*Hampton v. Superior Court* (1952) 38 Cal.2d 652, 656 [242 P.2d 1]; see also *Bach v. County of Butte* (1989) 215 Cal.App.3d 294, 301 [263 Cal.Rptr. 565].) "The reversal of a judgment on appeal with directions to the trial court to enter a specific judgment determines the merits of the cause just as effectively as though the judgment were affirmed on appeal." (*Lial v. Superior Court* (1933) 133 Cal.App. 31, 34 [23 P.2d 795].)

The limited reversal approach is well adapted to dependency cases involving termination of parental rights in which we find the only error is defective ICWA notice. This approach allows the juvenile court to regain jurisdiction over the dependent child and determine the one remaining issue. The parties already have litigated all other issues at the section 366.26 hearing, and it is not necessary to have a complete retrial. Thus, the child is afforded the protection of the juvenile court, and, at the same time, his or her case is processed to cure the ICWA error, which is more expeditious than a full rehearing of all section 366.26 issues. Indeed, a new section 366.26 hearing would be subject to another appeal; by not following our practice we could easily age a child out of adoptability into long-term foster care, which is the least favored permanent plan. Further, we know of no rule or law that would prohibit use of this procedure in child dependency cases. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 405 [2 Cal.Rptr.3d 683, 73 P.3d 541] [review of juvenile dependency cases governed by general rules of appellate procedure].)

For some time, we have employed limited reversals in appeals involving defective ICWA notice with directions to reinstate the judgment if no Indian tribe chooses to intervene. (See, e.g., *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 262 [126 Cal.Rptr.2d 639] [order]; *In re S.M.* (2004) 118 Cal.App.4th 1108, 1123 [13 Cal.Rptr.3d 606] [judgment].) This practice also is prevalent among the Courts of Appeal in this state. (See, e.g., *In re Marinna J.* (2001) 90 Cal.App.4th 731 [109 Cal.Rptr.2d 267] [3d Dist.]; *In re Samuel P.* (2002) 99 Cal.App.4th 1259 [121 Cal.Rptr.2d 820] [6th Dist.]; *In re Suzanna L.* (2002) 104 Cal.App.4th 223 [127 Cal.Rptr.2d 860] [4th Dist., Div. 2]; *In re H.A.* (2002) 103 Cal.App.4th 1206 [128 Cal.Rptr.2d 12] [5th Dist.]; *In re Glorianna K.* (2005) 125 Cal.App.4th 1443 [24 Cal.Rptr.3d 582] [2d Dist., Div. 4].)

The limited reversal disposition in defective notice ICWA appeals is in keeping with the public policy of our child dependency scheme, which favors prompt resolution of cases. (See *In re Marilyn H.* (1993) 5 Cal.4th 295, 307, 309 [19 Cal.Rptr.2d 544, 851 P.2d 826].) "The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time." (*Id.* at p. 307.) Delay in this regard does not serve the child's best interest. (*In re Emily L.* (1989) 212 Cal.App.3d 734, 743 [260 Cal.Rptr. 810].) After services have been terminated, "dependency actions [should] be resolved expeditiously." (*In re Jesusa V.* (2004) 32 Cal.4th 588, 625 [10 Cal.Rptr.3d 205, 85 P.3d 2].) "Courts should strive to give the child [a] stable, permanent placement, and [a] full emotional commitment, as promptly as reasonably possible consistent with protecting the parties' rights and making a reasoned decision." (*In re Celine R.* (2003) 31 Cal.4th 45, 59 [1 Cal.Rptr.3d 432, 71 P.3d 787].)

■ Furthermore, this approach also is in accordance with established principles of appellate practice, which focus on the evidence before the trial court and do not consider postjudgment events. Ordinarily, an appellate court is confined in its review to the proceedings that took place in the court below and are brought up for review in the record on appeal. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 328, p. 369.) Thus, "[m]atters occurring after entry of judgment are ordinarily not reviewable: The appeal reviews the correctness of the judgment or order as of the time of its rendition, leaving later developments to be handled in subsequent litigation." (9 Witkin, Cal. Procedure, *supra*, § 330, at pp. 371–372.) As the appellate court in one early case put it: "The function of an appellate court is to review the action of the inferior court in rendering the judgment . . . from which the appeal is taken. For this purpose a record of the proceedings before the inferior court and of the matters presented for its action is brought to the appellate court, and in determining the correctness of the judgment . . . appealed from it is limited to a consideration of that record. If the judgment is affirmed such affirmance is as of the date at which it was rendered. If it is reversed the case stands as if no judgment had been rendered by the inferior court. It is therefore manifest that error on the part of the inferior court cannot be predicated by reason of any matter occurring subsequent to its rendition of the judgment, and it is equally evident that it would be irrelevant for the appellate court to entertain any evidence of such subsequent matters." (*People's Home Sav. Bank v. Sadler* (1905) 1 Cal.App.189, 193–194 [81 P. 1029].) The California Supreme Court in *In re Zeth S., supra,* 31 Cal.4th at page 405 removed any doubt that these

rules apply to dependency cases. "There is no blanket exception to the general rule for juvenile dependency appeals." (*Ibid.*)[7]

Francisco's appellate counsel contends a new section 366.26 hearing after remand for ICWA notice is essential to protect a child's fundamental right to maintain his or her biological family; accordingly, our practice of limited reversals in such cases violates substantive due process principles. The contention is without merit.

Counsel points out section 366.26, subdivision (c)(1), which sets forth the procedure that must be followed before parental rights are terminated, requires a hearing be held in which the court determines if the child is adoptable at that time and whether any of the statutory exceptions to adoption exists. With an interval of "at least nine to ten months" to cure the ICWA notice defect, counsel argues due process mandates a new section 366.26 hearing and its procedural protections to allow the court to consider changes in circumstances that affect the child's adoptability before his or her biological ties are severed. Further, counsel argues we act in excess of our jurisdiction when we order the juvenile court to revisit only the ICWA issue because that is essentially telling the lower court to disregard the legislative mandate for a section 366.26 hearing at which the child's current adoptability can be judged. We disagree with both arguments.

Francisco and Earl had the hearing required by section 366.26 in which they could have contested Francisco's adoptability, asserted a statutory exception to adoption applied, and argued adoption was not in the child's best interest, but they did not assert any of these claims. Francisco and Earl received the substantive due process protections built into section 366.26. Section 366.26 does not require—either expressly or impliedly—a second hearing when the sole reason for reversal is ICWA notice error. Curing the ICWA error is distinct and separate from the section 366.26 protections.

We similarly reject counsel's argument that we act in excess of our jurisdiction.

---

[7] We acknowledge, as Francisco's appellate counsel points out, that dependency proceedings are special proceedings, which are governed by their own rules and statutes. (§ 300 et seq.; rule 1440 et seq.) Further, "[u]nless otherwise specified, the requirements of the Civil Code and the Code of Civil Procedure do not apply" to dependency proceedings. (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 711 [17 Cal.Rptr.2d 759], fn. omitted.) "However, in the absence of a dispositive provision in the Welfare and Institutions Code, we may look to these requirements [provisions of the Civil Code and Code of Civil Procedure] for guidance." (*In re Josiah Z.* (2005) 36 Cal.4th 664, 679 [31 Cal.Rptr.3d 472, 115 P.3d 1133].)

Counsel relies upon *In re S.D.* (2002) 99 Cal.App.4th 1068 [121 Cal.Rptr.2d 518], *In re Baby Girl M.* (1984) 37 Cal.3d 65 [207 Cal.Rptr. 309, 688 P.2d 918], and *In re Arturo A.* (1992) 8 Cal.App.4th 229 [10 Cal.Rptr.2d 131] to support her proposition that changing circumstances must or should be considered on remand. The cases are inapposite: the first is not an ICWA case; and the latter two predate implementation of our current statutory dependency scheme. Further, *In re Baby Girl M., supra,* is not a dependency case.

Counsel has not raised any adverse consequence to Francisco by reinstating an otherwise valid order, if no tribe intervenes. Francisco was placed with his maternal grandmother, who wants to adopt him, and there is no indication the relevant circumstances have or will change. We see no justification in requiring the juvenile court to revisit the issue of his adoptability when it was not questioned at trial or on appeal. If we view counsel's call for us to drop our practice of limited reversals in all ICWA cases, the dire consequences she predicts are speculative at best. Another problem with counsel's position is that in every case we would have to remand for a new section 366.26 hearing, with the attendant delays for notice, trial and appeal. Counsel has not offered any support for the sweeping general principle she and Earl's counsel advocate.

 As indicated above, we adopted our practice of limited reversals because it promotes the child's best interests and the public policy of this state—namely, that when reunification is not feasible, a permanent home should be found for the child in the most expeditious manner possible under the law. If the only error requiring reversal of the judgment terminating parental rights is defective ICWA notice and it is ultimately determined on remand that the child is not an Indian child, the matter ordinarily should end at that point, allowing the child to achieve stability and permanency in the least protracted fashion the law permits.

We acknowledge there very well might be exceptional cases—those in which significant circumstances have changed during the pendency of the appeal and have adversely affected the likelihood of the child being adopted, and for which an alternate disposition would be in order to avoid a result adverse to the child upon remand. However, we reject the argument of Francisco's counsel and Earl's counsel that our practice of limited reversals in ICWA notice cases effectively ties the hands of the juvenile court on remand and prevents it from reacting to such changes in circumstances.

Rather, we find the law accommodates the extraordinary case in which a postjudgment change in circumstances makes it unlikely the child will be adopted, and our limited reversal practice does not infringe upon these accommodations.

The Legislature recently addressed the problem of postjudgment changes in circumstances affecting a child's adoptability by enacting section 366.26, subdivision (i)(2). (See Stats. 2005, ch. 640, § 6.1.) This provision allows a child who has not been adopted after three years to petition the juvenile court to reinstate parental rights, thereby allowing a different permanent plan to be chosen. (§ 366.26, subd. (i)(2).) The provision also allows a child to file the petition earlier than three years if the child welfare agency stipulates the child is no longer likely to be adopted. (*Ibid.*) Section 366.26, subdivision (i)(2) is expressly retroactive.[8]

In our view, section 366.26, subdivision (i)(2) provides the juvenile court with adequate opportunity to restore parental rights if the circumstances demand it. The three-year period set forth in the first sentence of section 366.26, subdivision (i)(2) does not seem to us to be an insurmountable barrier to a just result. A large part of the three-year threshold period will have passed by the time the case has been reviewed by the appellate court, remanded to cure the notice error, had the judgment reinstated (if the child is

---

[8] Section 366.26, subdivision (i)(2) reads: "A child who has not been adopted after the passage of at least three years from the date the court terminated parental rights and for whom the court has determined that adoption is no longer the permanent plan may petition the juvenile court to reinstate parental rights pursuant to the procedure prescribed by Section 388. The child may file the petition prior to the expiration of this three-year period if the State Department of Social Services or licensed adoption agency that is responsible for custody and supervision of the child . . . and the child stipulate that the child is no longer likely to be adopted. A child over 12 years of age shall sign the petition in the absence of a showing of good cause as to why the child could not do so. If it appears that the best interests of the child may be promoted by reinstatement of parental rights, the court shall order that a hearing be held and shall give prior notice, or cause prior notice to be given, to the social worker or probation officer and to the child's attorney of record, or, if there is no attorney of record for the child, to the child, and the child's tribe, if applicable, by means prescribed by subdivision (c) of Section 297. The court shall order the child or the social worker or probation officer to give prior notice of the hearing to the child's former parent or parents whose parental rights were terminated in the manner prescribed by subdivision (f) of Section 294 where the recommendation is adoption. The juvenile court shall grant the petition if it finds by clear and convincing evidence that the child is no longer likely to be adopted and that reinstatement of parental rights is in the child's best interest. If the court reinstates parental rights over a child who is under 12 years of age and for whom the new permanent plan will not be reunification with a parent or legal guardian, the court shall specify the factual basis for its findings that it is in the best interest of the child to reinstate parental rights. This subdivision is intended to be retroactive and applies to any child who is under the jurisdiction of the court at the time of the hearing regardless of the date parental rights were terminated."

found not to be an Indian child) and the case again reviewed on appeal. Furthermore, if the changed circumstances are of such magnitude as those hypothesized by Francisco's appellate counsel in this case, we see no reason why the relevant parties—that is, Agency and the child—would not agree to stipulate that the likelihood of adoption no longer exists, thereby allowing the child to petition the court for reinstatement of the parental rights prior to the expiration of the three-year period as set forth in the second sentence of section 366.26, subdivision (i)(2).

Thus, we conclude our limited reversal practice is not an obstacle to the juvenile court preventing the child from becoming a legal orphan, a "disfavor[ed] . . . status." (*In re Jerred H.* (2004) 121 Cal.App.4th 793, 799 [17 Cal.Rptr.3d 481]; see also *In re Jayson T.* (2002) 97 Cal.App.4th 75, 85 [118 Cal.Rptr.2d 228], disapproved on other grounds in *In re Zeth S.*, *supra*, 31 Cal.4th at pp. 413–414 [legal orphanage is a consequence the law abhors].)[9]

We reiterate that our purpose in adhering to the limited remand option in ICWA notice cases is to avoid unnecessary delay in section 366.26 appeals. Recognizing that through the passage of time alone, a child may become unadoptable, we have adopted our limited reversal practice, which is a more streamlined procedure and far more expeditious than an unlimited remand. After all, the more time that passes before an adoption is finalized, the greater the chance that a child's likely-to-be adopted status will change. Discarding our limited reversal practice and instead ordering only full remands would increase the likelihood of a child previously found to be adoptable becoming unadoptable by the end of the appellate process. In other words, full remands are more likely to result in legal orphans than our current practice of limited reversals.

In conclusion, we reject counsel's argument that our practice of limited remands in ICWA notice cases leaves the juvenile court without power to act when postjudgment developments render a child no longer likely to be adopted. Further, we conclude that a limited remand does not present any reasonable likelihood of a miscarriage of justice to a dependent child that cannot be remedied by the juvenile court or the reviewing court. (See § 366.26, subd. (i)(2).)

---

[9] Termination of parental rights not followed by adoption makes the child a legal orphan. (*In re Carl R.* (2005) 128 Cal.App.4th 1051, 1062 [27 Cal.Rptr.3d 612].)

## DISPOSITION

The judgment terminating parental rights is reversed and the case is remanded to the juvenile court with directions to order Agency to comply with the notice provisions of ICWA, the relevant case law interpreting ICWA and the views expressed in this opinion, and to file all required documentation with the juvenile court for the court's inspection. If, after proper notice, a tribe claims Francisco is an Indian child, the juvenile court shall proceed in conformity with all provisions of ICWA. If, on the other hand, no tribe claims that Francisco is an Indian child, the judgment terminating parental rights shall be reinstated.

McConnell, P. J., and McIntyre, J., concurred.

A petition for a rehearing was denied June 7, 2006, and appellant's petition for review by the Supreme Court was denied August 16, 2006, S144649.