Filed 5/20/22  In re Jayden G. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re JAYDEN G., a Person Coming Under the Juvenile Court Law. | B314237 (Los Angeles County Super. Ct. No. DK14007B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. FRANK W., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Lisa A. Brackelmanns, Judge Pro Tempore. Affirmed.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

In this juvenile dependency case initiated in 2015, the father challenges, for the first time in this 2021 appeal following the termination of his parental rights, the failure of the Los Angeles Department of Children and Family Services (the Department) to ask extended family members, at the time the case was initiated in 2015 or thereafter, about the family's possible American Indian heritage after he and the mother repeatedly both denied any such heritage.  We conclude that any error was harmless, and affirm the trial court's order terminating his parental rights.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

Eileen G. (mother) and Frank W. (father) are parents to Jayden G., born in August 2014.  Mother also has two other children with two other men—an older daughter born in November 2005 and a younger son born January 2020.[1]

---

[1]    Neither mother nor Jayden's half siblings are involved in this appeal.

Mother and father have a history of domestic violence.  In July 2015, they engaged in a physical altercation while they tussled over Jayden.  In October 2015, in Jayden's presence, father repeatedly hit mother in the face with his fists.  Both parents also have a history of abusing drugs.

## II.    Procedural Background

### A.    *Petition*

On October 27, 2015, the Department filed a petition asking the juvenile court to exert dependency jurisdiction over Jayden on the basis of (1) mother's and father's history of domestic violence (rendering jurisdiction appropriate under Welfare and Institutions Code section 300, subdivisions (a) and (b))[2], and (2) mother's and father's illicit drug use (rendering jurisdiction appropriate under section 300, subdivision (b)).

### B.    *Parents deny American Indian ancestry and court makes ICWA finding*

Prior to the filing of the petition, mother completed an ICWA questionnaire indicating she did not have any American Indian ancestry.  And in October 2017, both mother and father completed parental Notification of Indian Status ICWA-020 forms indicating, "I have no Indian ancestry as far as I know."

At the detention hearing on October 27, 2015, the juvenile court confirmed with mother and father that they have no known Indian ancestry.  The court went on to find that it "does not have a reason to know that [Jayden] is an Indian Child" and ruled that ICWA "does not apply as to Jayden."  However, the court ordered mother and father to "keep the Department, their Attorney and

---

[2]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

the Court aware of any new information relating to possible ICWA status." Neither mother nor father ever informed the court in Jayden's case of any possible Indian heritage. Indeed, in November 2015, mother reiterated to the Department that there was no American Indian heritage in her family.

**C.** *Initial termination of dependency jurisdiction with a legal guardianship*

In December 2015, the juvenile court sustained the petition and thereafter removed Jayden from both parents' custody and ordered the Department to provide reunification services. In November 2016, the court terminated those services and, in December 2017, placed Jayden under the legal guardianship of his paternal grandparents.

**D.** *Reinstatement of dependency jurisdiction and termination of parental rights*

In March 2020, paternal grandmother filed a section 388 petition requesting that mother's and father's parental rights be terminated so they could adopt Jayden. The juvenile court reinstated dependency jurisdiction in July 2020, terminated the legal guardianship in February 2021, and terminated the parents' parental rights on August 2, 2021.

**E.** *Appeal*

Father timely filed this appeal from the order terminating his parental rights over Jayden.

**F.** *Postappeal ICWA inquiry and order*[3]

---

[3] We grant the Department's request for judicial notice of these postappeal proceedings over father's objection. (Evid. Code, §§ 452, subd. (d); 459, subd. (a).)

In determining whether the juvenile court committed error, the appellate court generally is limited to matters that were

On March 3, 2022, and while father's appeal was pending before this court, the Department provided the juvenile court with a report and last-minute information detailing (1) a 2020 investigation into mother's American Indian heritage conducted by the Department in the dependency proceedings for Jayden's younger, maternal half brother; and (2) a 2022 investigation into

---

before the juvenile court when it made the ruling at issue. (*In re Zeth S.* (2003) 31 Cal.4th 386, 400.) However, here we do not take judicial notice of the postappeal proceedings to determine whether error occurred under ICWA; indeed, we assume below that the Department breached its duty of inquiry under ICWA. Rather, we take judicial notice to determine whether there was resulting prejudice from that assumed error. (*In re Z.N.* (2009) 181 Cal.App.4th 282, 298-299.) Thus, the authorities father cites where appellate courts declined to accept additional evidence (Code Civ. Proc., § 909) to determine whether ICWA was violated in the first instance are inapposite. (*In re I.G.* (2005) 133 Cal.App.4th 1246, 1252-1253; *In re Nikki R.* (2003) 106 Cal.App.4th 844, 852; *In re Glorianna K.* (2005) 125 Cal.App.4th 1443, 1450-1451; but see *In re Christopher I.* (2003) 106 Cal.App.4th 533, 563 [augmenting record with additional evidence of ICWA compliance because remanding "would be futile and would not be in [child's] best interests"].) What is more, father's assertion that we may not consider the postappeal proceedings because there is no indication he was served with the Department's report or last-minute information, that he was present at the hearing where the juvenile court made a further finding that ICWA does not apply, that the reports were not authenticated, and that the juvenile court did not admit the reports into evidence misses the mark—appellate courts are themselves authorized to take judicial notice of eligible documents for the first time on appeal (Evid. Code, § 459) and father has the opportunity now to address those postappeal proceedings in relation to the question of prejudice.

5

father's American Indian heritage conducted by the Department in Jayden's case.

1.     *Inquiry as to mother's American Indian heritage*

In June 2020, mother told the juvenile court presiding over the petition *as to Jayden's younger brother* that she might have Native American ancestry from the Blackfoot tribe.  Mother referred the court to her grandfather (that is, Jayden's maternal great-grandfather) and provided his contact information.  The Department spoke with him in July 2020, and while he reported that his parents (who were then deceased for many years) had "told him stories about being Indian," he also reported that his parents were Mexican and he had no knowledge of his family having any Native American heritage.  Maternal great-grandfather stated there were no relatives who could provide the Department with any further information.  The Department also spoke with maternal aunt.  She reported that maternal great-grandfather believes his family may have Blackfoot heritage because his deceased relatives "had stories," but that her own research had turned up nothing.  Maternal aunt also stated that the family is "Mexican American and they do not have any Native American" heritage.  The Department tried contacting mother several times in June and July 2020 to discuss any further leads for investigating Native American heritage in her family, but she never responded.  When that bore no fruit, the Department sent notice to the Blackfoot tribe in July 2020 regarding the dependency proceedings as to Jayden's half sibling.  On August 6, 2020, the juvenile court found that "ICWA does not apply" to the case of Jayden's half sibling.

2. *Inquiry as to father's American Indian heritage*

As for father, paternal grandmother reported in February 2022 that she has "no heritage as [an] Indian[]"; and that she was born to Dutch and Polish parents and was adopted by parents with long lineages traced to England and Ireland. Paternal grandfather reported that his ancestors "are from England, Holland and Sweden." The Department tried contacting father several times in February and March 2022 to discuss any further leads for investigating Native American heritage in his family, but he never responded.

3. *Order*

Based on this updated reporting, the juvenile court made another ICWA finding on March 9, 2022, that essentially restated its earlier, 2015 finding—that is, that the court "does not have reason to know that [Jayden] is an Indian Child, as defined under ICWA."

## DISCUSSION

Father argues that the order terminating his parental rights must be reversed because the Department failed to discharge its duty under ICWA and related California law to inquire into Jayden's possible American Indian heritage when the juvenile court reinstated dependency jurisdiction in July 2020. "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order." (*In re A.M.* (2020) 47 Cal.App.5th 303, 314 (*A.M.*).)

## I.    Governing Law

ICWA was enacted to curtail "the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement." (*Miss. Band of*

*Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 32.)  Under the ICWA and California statutes our Legislature enacted to implement it (§§ 224-224.6), as recently amended, a juvenile court—and, as its delegate, the Department—have duties all aimed at assessing whether a child in a pending dependency case is an "Indian child" entitled to the special protections of ICWA. (§§ 224.2, 224.3; Stats. 2018, ch. 833 (Assem. Bill No. 3176); *A.M.*, *supra*, 47 Cal.App.5th at pp. 320-321 [applying ICWA law in effect at time of order appealed from].)  For these purposes, an "'Indian child'" is a child who (1) is "a member of an Indian tribe," or (2) "is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4); Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal law definition].)  By its terms, this definition turns "'on the child's political affiliation with a federally recognized Indian Tribe,'" not "necessarily" "the child's race, ancestry, or 'blood quantum.'"  (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882 (*Austin J.*), quoting 81 Fed.Reg. 38801-38802 (June 14, 2016).)

Under ICWA as amended, the Department and juvenile court have "three distinct duties."  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*) [noting amendment's creation of three duties]; *Austin J.*, *supra*, 47 Cal.App.5th at pp. 883-884 [same].)  Only the first duty is at issue here:  The initial "duty" of the Department and the juvenile court "to inquire whether [a] child is an Indian child."  (§ 224.2, subds. (a) & (b).)  The Department discharges this duty chiefly by "asking" family members "whether the child is, or may be, an Indian child."  (*Id.*, subd. (b).)  This includes inquiring of not only the child's parents, but also others, including but not limited to, "extended family members."  (*Ibid.*)  For its part, the juvenile court is required,

8

"[a]t the first appearance" in a dependency case, to "ask each participant" "present" "whether the participant knows or has reason to know that the child is an Indian child." (*Id.*, subd. (c).)

Should an appellate court conclude that the juvenile court did not comply with its duty of initial inquiry under ICWA, the court's next task is to evaluate whether its noncompliance was prejudicial. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741-742 (*Benjamin M.*), citing Cal. Const., art VI, § 13.) Right now, the courts of appeal have splintered into three factions regarding how to evaluate prejudice in these circumstances. One line of cases puts the onus on the parent complaining of the ICWA violation to represent on appeal that, "at a minimum," the parent "would, in good faith, have claimed some kind of Indian ancestry." (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069.) A second line of cases deems a lapse in the Department's initial inquiry to be prejudicial only if the record indicates that "there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, at p. 744.) In practice, this means that a lapse in inquiry is prejudicial where there were viable leads that could have been investigated but were not. (*In re A.C.* (2022) 75 Cal.App.5th 1009, 1012, 1015-1016 [Department did not talk to the biological relatives of the child's mother, when the mother had been adopted, despite having a lead on how to contact those relatives]; *In re Y.W.* (2021) 70 Cal.App.5th 542, 553 [same]; *In re S.S.* (2022) 75 Cal.App.5th 575, 582 [Department did not ask maternal relative about Indian ancestry despite talking with relative].) The final line of cases either expressly or functionally deems *any* error to be prejudicial. (*In re H.V.* (2022) 75 Cal.App.5th 433, 439 (*H.V.*) [holding that, in all cases, any breach

of the duty of initial inquiry is reversible error]; *In re Antonio R.* (2022) 76 Cal.App.5th 421, 435 [noting that "in most circumstances" any breach of the duty of initial inquiry will be reversible error].)

## II.  Analysis

Even if we assume (as the Department has conceded) that the Department had a duty to conduct a new initial inquiry upon reinstating dependency jurisdiction in 2020 (under the amended law that requires the more fulsome inquiry) and even if we assume that the Department breached that duty, its breach was not prejudicial in this case no matter *which* prejudice test is adopted (except *H.V.*'s automatic-reversal-no-matter-what rule, which we reject as inconsistent with the "miscarriage of justice" mandate in our State's Constitution (Cal. Const., art VI, § 13)).[4]

There is no prejudice here because the Department eventually conducted the very initial inquiry that father complains it did not in July 2020.  The Department asked *father's* extended family about possible Native American heritage on father's side of the family.  Both paternal grandparents unequivocally denied Native American heritage.  The Department also asked, in the context of the half sibling's case, *mother's* extended family about possible Native American heritage on mother's side of the family.  Through that inquiry, the Department learned that maternal great-grandfather had heard "stories" of Native American heritage, but also learned that any family members with additional information were long deceased and both he and maternal aunt personally denied any

_____

[4]     We reject father's argument that the Department's concession of error somehow renders moot the inquiry into prejudice.  One does not flow from the other.

10

Native American heritage. (See *In re A.M.* (2020) 47 Cal.App.5th 303, 323 [finding duty of inquiry satisfied under similar facts].) The Department then followed up on the potential Blackfoot heritage by notifying the pertinent tribes. Where, as here, there has been a finding based on a proper inquiry that ICWA does not apply as to a half sibling, the sufficiency of that inquiry renders nonprejudicial any lapse in inquiry as to a half sibling with the same parent. (See *In re Darian R.* (2022) 75 Cal.App.5th 502, 509.)

Father asserts what boils down to two arguments in response.

First, father argues that the inquiry as to mother's extended family was inadequate because (1) the investigation conducted in the case of Jayden's half sibling is not "fungible" (*In re Robert A.* (2007) 147 Cal.App.4th 982, 990), and (2) the Department did not interview two specific relatives no one previously identified as having any relevant information beyond being cohabitants of mother's (namely, the maternal grandmother and maternal cousin). We disagree. Remanding so that the Department can try to locate and then interview any "extended family" member either parent can suggest (which, due to the open-ended definition of "extended family," could conceivably include fifth cousins thrice removed, and even beyond) is unlikely to lead to any different result particularly where, as here the Department has already followed up with the very extended family members that the parent with possible heritage has identified as having pertinent information. Based on the full investigation the Department conducted, the result of any further limited remand is "preordained"—that is, that there is no reason to believe Jayden is an Indian child. (*In re E.W.*

11

(2009) 170 Cal.App.4th 396, 402.) To accept father's argument is to effectively hold that ICWA error is always prejudicial. We decline to remand when it would be "a waste of ever-more-scarce judicial resources." (*Ibid.*)

Second, father argues that the record does not reflect whether the Blackfoot tribe responded to the notice about Jayden's sibling. That is immaterial because notice to the tribe was not required in the first place. (§ 224.2, subd. (e) [duty to "make further inquiry" triggered if Department "has reason to believe that an Indian child is involved"]; § 224.3, subd. (a) [duty to notify relevant tribe triggered if Department "knows or has reason to know . . . that an Indian child is involved"]; see also § 224.2, subd. (d) [defining "reason to know"].)

## DISPOSITION

The order terminating father's parental rights is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ

12