[No. D039556. Fourth Dist., Div. One. Oct. 30, 2002.]

DWAYNE P. et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Real Party in Interest.

COUNSEL

Timothy A. Chandler, Alternate Public Defender, Erika Hiramatsu and, Timothy O. Brackney, Deputy Alternate Public Defenders, for Petitioner Rosemary P.

Roberto Quinones, Jr., Deputy Alternate Public Defender; and Kathleen Murphy Mallinger for Petitioner Dwayne P.

Joanne Willis Newton for California Indian Legal Services and Pauma-Yuima Band of Mission Indians as Amici Curiae on behalf of Petitioner Dwayne P.

No appearance for Respondent.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, Gary C. Seiser, Kathryn E. Krug and L. David Casey, Deputy County Counsel, for Real Parties in Interest.

## OPINION

McCONNELL, J.—Dwayne P. and Rosemary P. seek review of the juvenile court's order terminating reunification services and scheduling a selection and implementation hearing under Welfare and Institutions Code[1] section 366.26, subdivision (*l*) and California Rules of Court,[2] rule 39.1B. The parents contend the court committed reversible error by not complying with the notice requirements of the Indian Child Welfare Act (the ICWA) (25 U.S.C. § 1901 et seq.). The San Diego County Health and Human Services Agency (the Agency) counters that the ICWA is inapplicable because there was insufficient indication the children are Indian children, and in any event, under *In re Pedro N.* (1995) 35 Cal.App.4th 183 [41 Cal.Rptr.2d 819] (*Pedro N.*), this court lacks jurisdiction to proceed because the parents did not appeal the jurisdictional and dispositional order in which the juvenile court addressed the ICWA issue.

We conclude the ICWA notice requirement is applicable. Further, we respectfully disagree with *Pedro N.,* and conclude that given the court's continuing duty throughout the dependency proceedings to ensure the requisite notice is given (rule 1439(f)(5)), and the protections the ICWA affords Indian children and tribes, the parents' inaction does not constitute a waiver or otherwise preclude appellate review. We grant the petitions with directions.

### FACTUAL AND PROCEDURAL BACKGROUND

Dwayne and Rosemary have twin sons, J. J. and J. D. At six months of age, J. D. was hospitalized for vomiting, decreased appetite and excessive sleepiness. Tests revealed he had two subdural hematomas and a humeral fracture. Doctors concluded his injuries were inflicted nonaccidentally.

The Agency took the twins into protective custody. On August 28, 2000, the Agency filed a petition on J. D.'s behalf under section 300, subdivision

---

[1] All statutory references are to Welfare and Institutions Code unless otherwise specified.
[2] All rule references are to the California Rules of Court.

(e), alleging he had been physically abused.[3] The Agency also filed a petition on J. J.'s behalf under section 300, subdivision (j), alleging he was at substantial risk of serious physical harm based on the nature of J. D.'s injuries.

In reports for the detention hearing and the combined jurisdictional and dispositional hearing, the Agency stated the ICWA "does or may apply," but the tribe was "not yet known." In paternity questionnaires, Dwayne claimed he may have Cherokee Indian heritage and Rosemary claimed Dwayne does have Cherokee Indian heritage.

At the September 2000 jurisdictional and dispositional hearing, Rosemary's counsel stated: "[Rosemary] does indicate that she [has] some Cherokee American Indian heritage, but she was not clear [as to] whether or not it was enough and whether or not she or somebody in her—on the maternal side is eligible for enrollment; so it appears [the ICWA] may be applicable. I'm not exactly sure."

The court found "that at this time . . . the [ICWA] does not apply." However, the court asked the Agency to make inquiries regarding the information Rosemary provided. The ICWA is not mentioned further in the record aside from the Agency's statements in subsequent reports that it was inapplicable. The parents neither raised an objection to the ruling at the juvenile court, nor appealed the jurisdictional and dispositional order.

In February 2001 the court sustained the Agency's petitions. At the 12-month review hearing, the court terminated reunification services and set a selection and implementation hearing under section 366.26. The parents' petitions for extraordinary writ relief followed, in which they raised for the first time the argument that the court erred by not giving notice under the ICWA. This court issued an order to show cause and stayed the section 366.26 hearing. The Agency responded and we heard argument. After argument, we requested and received supplemental briefing from the parties on the issue of federal preemption. We have also granted the application of California Indian Legal Services and Pauma-Yuima Band of Mission Indians, a federally recognized Indian tribe, to file an amicus curiae brief in support of Dwayne's petition.

---

[3]The petition originally contained a count under subdivision (a) of section 300, but the Agency later amended the petition to delete that count.

DISCUSSION

I

*Applicability of the ICWA Notice Requirement*

A

■ In 1978 Congress enacted the ICWA to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families." (25 U.S.C. § 1902.) The ICWA recognizes that " 'the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents.' " (*Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 52 [109 S.Ct. 1597, 1610, 104 L.Ed.2d 29].) "The ICWA presumes it is in the best interests of the child to retain tribal ties and cultural heritage and in the interest of the tribe to preserve its future generations, a most important resource. [Citation.] Congress has concluded the state courts have not protected these interests and drafted a statutory scheme intended to afford needed protection." (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 469 [99 Cal.Rptr.2d 688].)

The ICWA confers on tribes the right to intervene at any point in state court dependency proceedings. (25 U.S.C. § 1911(c); *In re Desiree F., supra,* 83 Cal.App.4th at p. 473.) "Of course, the tribe's right to assert jurisdiction over the proceeding or to intervene in it is meaningless if the tribe has no notice that the action is pending." (*In re Junious M.* (1983) 144 Cal.App.3d 786, 790-791 [193 Cal.Rptr. 40].) "Notice ensures the tribe will be afforded the opportunity to assert its rights under the [ICWA] irrespective of the position of the parents, Indian custodian or state agencies." (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421 [285 Cal.Rptr. 507].)

To implement the notice requirement, ICWA provides that "where the court *knows or has reason to know* that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a), italics added.) If the tribe is unknown, the notice must be given to the Bureau of Indian Affairs (the Bureau), as agent for the Secretary of the Interior. (25 U.S.C. § 1912(a); 25 C.F.R. § 23.2 (2002); *In re Edward H.* (2002) 100 Cal.App.4th 1, 4 [122 Cal.Rptr.2d 242].) "No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the . . . tribe or the [Bureau]." (25 U.S.C. § 1912(a).)

The ICWA defines an Indian child as an unmarried person under the age of 18 who is: 1) a member of an Indian tribe; or 2) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4).) Rule 1439, which implements the ICWA in California courts, incorporates the ICWA definition for Indian child without modification. (Rule 1439(a)(1)(A) & (B); *In re Santos Y.* (2001) 92 Cal.App.4th 1274, 1301 [112 Cal.Rptr.2d 692].)

The ICWA notice requirement is not onerous. "[C]ompliance requires no more than the completion of a preprinted form promulgated by the State of California, Health and Welfare Agency, for the benefit of county welfare agencies." (*In re Desiree F., supra,* 83 Cal.App.4th at p. 475.) When proper notice is not given under the ICWA, the court's order is voidable. (25 U.S.C. § 1914.)

B

 The parents contend they raised the possibility their children are Indian children within the meaning of the ICWA, and the court prejudicially erred by not complying with its notice requirement. The Agency counters that the court had no reason to know the children were Indian children as defined by the ICWA. The facts are undisputed, and the issue is one of statutory interpretation that we review independently. (*Bostean v. Los Angeles Unified School Dist.* (1998) 63 Cal.App.4th 95, 107-108 [73 Cal.Rptr.2d 523].)

 "The Indian status of the child need not be certain to invoke the notice requirement. [Citation.]" (*In re Desiree F., supra,* 83 Cal.App.4th at p. 471; *In re Kahlen W., supra,* 233 Cal.App.3d at p. 1422; *In re Junious M., supra,* 144 Cal.App.3d at p. 793.) "Enrollment is not required . . . to be considered a member of a tribe; many tribes do not have written rolls. [Citations.] While enrollment can be one means of establishing membership, it is not the only means, nor is it determinative. [Citation.] . . . Recently enacted . . . section 360.6 codifies the state Legislature's intent that the ICWA applies to children who are *eligible* for membership in an Indian tribe, even if not enrolled. . . . [R]ule 1439(g)(2) also specifically provides that '[i]nformation that the child is not enrolled in the tribe is not determinative of status as an Indian child.' " (*In re Desiree F., supra,* 83 Cal.App.4th at pp. 470-471.) Moreover, a child may qualify as an Indian child within the meaning of the ICWA even if neither of the child's parents is enrolled in the tribe. (*In the Matter of IEM* (1999) 233 Mich.App. 438 [592 N.W.2d 751, 756].)

"[O]ne of the primary purposes of giving notice to the tribe is to enable the *tribe* to determine whether the child involved in the proceedings is an

Indian child. [Citation.]" (*In re Desiree F., supra,* 83 Cal.App.4th at p. 470, italics added.) "A tribe's determination that the child is or is not a member of or eligible for membership in the tribe is conclusive." (Rule 1439(g)(1).) "Each Indian tribe has sole authority to determine its membership criteria, and to decide who meets those criteria. [Citation.] Formal membership requirements differ from tribe to tribe, as does each tribe's method of keeping track of its own membership. [Citation.]" (*In re Santos Y., supra,* 92 Cal.App.4th at p. 1300.)

The Bureau has issued Guidelines (Guidelines for State Courts; Indian Child Custody Proceedings (44 Fed.Reg. 67584 (Nov. 26, 1979)) for the implementation of the ICWA. The Guidelines instruct that the ICWA, the Guidelines themselves, and any state statutes or regulations designed to implement the act "shall be liberally construed in favor of a result that is consistent" with the congressional preference of deferring to tribal judgment on matters concerning Indian children. (44 Fed.Reg. at p. 67586.)

As to when the ICWA notice requirement is triggered, the Guidelines provide: "Circumstances under which a state court has reason to believe a child involved in a child custody proceeding is an Indian include but are not limited to the following: [¶] (i) Any party to the case, . . . or public . . . agency informs the court that the child is an Indian child. [¶] (ii) Any public or state-licensed agency involved in child protection services . . . has discovered information which *suggests* that the child is an Indian child. [¶] . . . [¶] (v) An officer of the court involved in the proceeding has knowledge that the child *may* be an Indian child." (Guidelines, *supra,* 44 Fed.Reg. at p. 67586, italics added.) In a commentary, the Guidelines caution that "[i]f anyone asserts that the child is an Indian or that there is reason to believe the child *may* be an Indian, then the court shall contact the tribe or the Bureau . . . for verification." (*Id.* at p. 67589, italics added.)

The Guidelines are not binding on state courts. (*In re Santos Y., supra,* 92 Cal.App.4th at p. 1301.) However, "cases that have resolved notice questions have followed the Guidelines in giving a broad reading to the obligation to give notice and redressing notice violations even where it is unclear that the child involved is an Indian child." (*In re M.C.P.* (1989) 153 Vt. 275 [571 A.2d 627, 633]; *In the Matter of IEM, supra,* 592 N.W.2d at p. 756, fn. 2.) In *In re Junious M., supra,* 144 Cal.App.3d at page 792, footnote 7, the court was persuaded that, insofar as the ICWA notice provisions are concerned, the Guidelines "represent a correct interpretation of the [ICWA]." The court noted, "[T]he construction of a statute by the executive department charged with its administration is entitled to great weight. [Citations.]" (*In re Junious M., supra,* at p. 792.) We also find the Guidelines notice provisions persuasive.

Rule 1439 harmonizes with the Guidelines by imposing on the court an affirmative duty to "inquire whether a child for whom a petition under section 300 . . . has been . . . filed is or *may* be an Indian child." (Rule 1439(d), italics added.) Further, under rule 1439(d) "[t]he circumstances that may provide probable cause for the court to believe the child is an Indian child include" the receipt of information from a party or other source "*suggesting* that the child is an Indian child." (Rule 1439(d)(2)(A), italics added.)

The Agency contends the terms *may* and *suggesting* in rule 1439 make the rule broader than and inconsistent with the ICWA's requirement that notice to the tribe is required when the court "knows or has reason to know that an Indian child is involved." (25 U.S.C. § 1912(a).) The Agency asserts rule 1439 "sets a far lower standard for the sending of notice under the ICWA" than the statute itself imposes. However, rule 1439 imposes substantively the same criteria as the Guidelines for determining when notice is necessary. ■■ ■ Because the Guidelines correctly interpret the ICWA notice requirements, it follows that rule 1439 also does so.[4]

■ In any event, the ICWA establishes only *minimum* federal standards (25 U.S.C. § 1902), and the Guidelines provide that state laws offering broader protections than the ICWA should be applied unless they "infringe any right accorded by the [ICWA] to an Indian tribe or child." (Guidelines, *supra*, 44 Fed.Reg. at p. 67586.) Rule 1439 does not infringe on rights bestowed by the ICWA. To the contrary, rule 1439 is an important and salutary measure, designed to foster the purposes of the ICWA.

In accordance with the Guidelines, courts have interpreted the ICWA notice provision broadly. (See, e.g., *In re Desiree F., supra,* 83 Cal.App.4th at p. 471 [notice requirement triggered by allegation in dependency petition that the ICWA possibly applied]; *In the Matter of IEM, supra,* 592 N.W.2d at p. 755 [statement that the mother's paternal family "had some Indian blood" sufficient to trigger notice requirement]; *In re J.T.* (1997) 166 Vt. 173 [693 A.2d 283, 288] [agency's inclusion in report of parent's statement to psychologist that "his father was 'full-blooded Mohican'" sufficient to trigger

---

[4]The Agency, citing *In re Edward H., supra,* 100 Cal.App.4th at page 4, asserts rule 1439 "does not track the federal statutory language on this issue." The issue in that case, however, was not the circumstances under which the ICWA notice requirement is triggered. Rather, the issue was whether giving notice to the Bureau and two of the three federally recognized Choctaw Tribes satisfied the notice requirement. The court noted rule 1439(f)(3), which requires that "[n]otice shall be sent to all tribes of which the child may be a member or eligible for membership," "does not track the federal statutory language on this issue. Instead, 25 United States Code section 1912(a) requires . . . notice to 'the Indian child's tribe.'" (*In re Edward H., supra,* at p. 4.) "'It is axiomatic that cases are not authority for propositions not considered.' [Citation.]" (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476].)

notice requirement]; *In Interest of H.D.* (1986) 11 Kan.App.2d 531 [729 P.2d 1234, 1236] [notice requirement triggered by information parent "is 15/32 degree Indian blood of the Cherokee Tribe"]; but see *In re A.L. and J.L.* (2001) 2001 N.D. 59 [623 N.W.2d 418] [counsel's "unsupported and vague statements" regarding parent's Indian heritage insufficient to invoke the ICWA].) We agree that "[t]o maintain stability in placements of children in juvenile proceedings, it is preferable to err on the side of giving notice and examining thoroughly whether the juvenile is an Indian child. [Citation.]" (*In re M.C.P., supra,* 571 A.2d at pp. 634-635.)[5]

 Here, the Agency noted in reports that the ICWA may apply but the specific tribe had not been determined. In paternity questionnaires, Dwayne stated he may have Cherokee Indian heritage and Rosemary stated Dwayne does have Cherokee Indian heritage. At the jurisdictional and dispositional hearing, Rosemary claimed she also had Cherokee Indian heritage on her maternal side, but her counsel stated she was unsure of the applicability of the ICWA. Dwayne again claimed Cherokee Indian heritage, but his counsel apparently believed actual registration in a tribe was required to trigger the ICWA.[6]

Although Rosemary and Dwayne were unsure of their status, "parents are not necessarily knowledgeable about tribal government or membership and their interests may diverge from those of the tribe and those of each other. [Citation.]" (*In re Kahlen W., supra,* 233 Cal.App.3d at p. 1425.) Further, the comments of the parents' attorneys do not constitute invited error or other waiver of appellate review. "There is nothing either in the ICWA or the case

---

[5]The Agency relies on *In Interest of M.N.W.* (Iowa Ct.App. 1998) 577 N.W.2d 874, 875-877, and *Matter of Johanson* (1987) 156 Mich.App. 608 [402 N.W.2d 13, 15-16], for the proposition that "[m]ere Indian ancestry is not enough to require notice under the ICWA." However, in *In Interest of M.N.W.,* the mother asserted the court is required on its own motion to determine whether the ICWA is triggered "based on whether the child's name indicated Native American heritage." (*In Interest of M.N.W., supra,* 577 N.W.2d at p. 876.) The court held that "[w]hile it is true a person's name may reflect heritage, we cannot assume names are necessarily indicators of heritage, given the multitude of possible explanations behind name-giving in our society. Our courts would be asked to use their creative rather than legal judgment to make such precautionary inquiries." (*Ibid.*) In *Matter of Johanson,* the record of juvenile court proceedings contained "several references to the Saginaw Tribe of Chippewa Indians," but "the reference . . . had to do with the fact that [the mother] at one time had rented a home on the Chippewa reservation." (*Matter of Johanson, supra,* 402 N.W.2d at pp. 15-16.) There was "nothing in the record to suggest [the mother] was a member of that tribe," and she admitted her attempt to obtain membership in that tribe during the dependency proceedings was unsuccessful. (*Id.* at p. 16.)

[6]"The Federal Register lists the recognized Indian entities. That list contains three Cherokee entities. Those entities are the Cherokee Nation of Oklahoma, the Eastern Band of Cherokee Indians of North Carolina, and the United Keetoowah Band of Cherokee Indians of Oklahoma. (61 Fed.Reg. 58211 (Nov. 13, 1996).)" (*In re Marinna J.* (2001) 90 Cal.App.4th 731, 737 [109 Cal.Rptr.2d 267] (*Marinna J.*).)

law interpreting it which enables anyone to waive the tribe's right to notice and right to intervene in child custody matters. [Citations.]" (*In re Desiree F., supra,* 83 Cal.App.4th at p. 471.)

The Agency complains that the parents made no evidentiary showing. The Agency notes parents can "contact their family and any tribe they think they may have heritage with, and seek to obtain further evidence of their Indian ancestry that would show their child is or may be an Indian child," "take steps to become enrolled members themselves, or to enroll their children, if they truly have Indian heritage and are eligible," and "bring that new information to the court and seek to modify the previous orders, require notice to the tribe, and compel the application of the ICWA." The ICWA, however, is designed to protect Indian children and tribes notwithstanding the parents' inaction. (*Marinna J., supra,* 90 Cal.App.4th at p. 739; *In re Kahlen W., supra,* 233 Cal.App.3d at pp. 1424-1425.) The Agency does not distinguish between a showing that may establish a child is an Indian child within the meaning of the ICWA and the minimal showing required to trigger the statutory notice provisions.

■ "Our primary aim in construing any law [or administrative regulation] is to determine the legislative intent. [Citation.] In doing so we look first to the words of the statute, giving them their usual and ordinary meaning." (*Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 501 [247 Cal.Rptr. 362, 754 P.2d 708].) ■ We conclude this information gave the court "reason to know that . . . Indian child[ren] [are] involved." (25 U.S.C. § 1912(a).) At a minimum, the facts *suggested* that J. J. and J. D. may be Indian children within the meaning of the ICWA. (Rule 1439; Guidelines, *supra,* 44 Fed.Reg. at p. 57489.) Synonyms for the term *suggest* include "imply," "hint," "intimate" and "insinuate." (American Heritage Dict. (college ed. 1981) p. 1287.)

The ICWA notice requirement was triggered here, and the "juvenile court's failure to secure compliance with the notice provisions of the [ICWA] is prejudicial error." (*In re Kahlen W., supra,* 233 Cal.App.3d at p. 1424.) Thus, the matter must be remanded for reconsideration after proper statutory notice is given. (*Id.* at p. 1426.)

II

*Jurisdictional/Waiver Issue*

■ The Agency contends this court lacks jurisdiction to consider Dwayne's and Rosemary's petitions. "In its most fundamental sense, lack of

jurisdiction means an entire absence of power to hear the particular subject matter of the case. [Citation.]" (*In re Jody R.* (1990) 218 Cal.App.3d 1615, 1622 [267 Cal.Rptr. 746].) The Agency does not claim we lack subject matter jurisdiction. Rather, the Agency asserts state law precludes appellate review of the ICWA issue because the parents did not properly perfect their right of appeal. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2001) ¶ 2:19, pp. 2-14 to 2-15.)

In dependency proceedings, the court's dispositional and following orders are directly appealable, with the exception of an order scheduling a selection and implementation hearing under section 366.26. (§§ 366.26, subd. (*l*), 395; rule 39.1B; *Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 811-812 [41 Cal.Rptr.2d 731].) Generally, under the so-called waiver rule, a parent may not attack the validity of a prior appealable order for which the statutory time for filing an appeal has passed. (*In re Jesse W.* (2001) 93 Cal.App.4th 349, 355 [113 Cal.Rptr.2d 184].) Such a limitation is necessary to promote finality and expedition of decisions concerning children and their interests in securing stable homes. (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150-1152 [65 Cal.Rptr.2d 913].)

The Agency relies on *Pedro N., supra,* 35 Cal.App.4th 183, in which the court held that because "the mother could have challenged the court's decision to proceed [allegedly without proper ICWA notice] at the dispositional hearing and did not do so," she was "foreclosed from raising the issue now on appeal from the order terminating her parental rights." (*Id.* at p. 189.) In *Pedro N.*, the court also held that in enacting 25 United States Code section 1914, which renders a dependency order issued without the requisite notice voidable, "Congress did not intend to preempt, in the case of appellate review, state law requiring timely notices of appeal from a parent who appeared in the underlying proceedings and who had knowledge of the applicability of the ICWA." (*Pedro N., supra,* at p. 190.)[7]

In *Marinna J., supra,* 90 Cal.App.4th 731, the court rejected *Pedro N.* and held the mother's claim the ICWA notice requirements were violated

---

[7]"[T]here are three ways federal law may be found to preempt state law: (1) by virtue of an express preemption clause in the federal law; (2) by 'implied preemption,' otherwise sometimes referred to as the 'occupation of the field' by the federal government; or (3) by virtue of a conflict between the provisions of federal and state law." (*In re Brandon M.* (1997) 54 Cal.App.4th 1387, 1396 [63 Cal.Rptr.2d 671].) As to the third prong, the United States Supreme Court has held: "State jurisdiction is pre-empted by the operation of federal law if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the state interests at stake are sufficient to justify the assertion of state authority." (*New Mexico v. Mescalero Apache Tribe* (1983) 462 U.S. 324, 334 [103 S.Ct. 2378, 2386, 76 L.Ed.2d 611].)

was cognizable on appeal of the order terminating her parental rights, although she never objected at the trial court and did not appeal the dispositional order in which the ICWA issue was addressed. (*Marinna J., supra,* at p. 737.) The court held that given the information of the father's Cherokee Indian heritage, "it would be contrary to the terms of the [ICWA] to conclude, as the court did implicitly in . . . *Pedro N., supra,* 35 Cal.App.4th 183, that parental inaction could excuse the failure of the juvenile court to ensure that notice under the [ICWA] was provided to the Indian tribe named in the proceeding." (*Marinna J., supra,* at p. 739.)

The *Marinna J.* court further explained: "[W]here the notice requirements of the [ICWA] were violated and the parents did not raise that claim in a timely fashion, the waiver doctrine cannot be invoked to bar consideration of the notice error on appeal. Our conclusion is consistent with the protections afforded in the [ICWA] to the interests of Indian tribes . . . . [¶] Lacking proper notice, the proceedings in this case did not produce a valid termination of parental rights." (*Marinna J., supra,* 90 Cal.App.4th at p. 739.) *Marinna J.* includes no discussion of federal preemption.

The parents contend that under *Marinna J.* and federal preemption principles, the ICWA notice issue may be raised any time during the dependency proceedings. Without reaching the federal preemption issue, we conclude the parents' failure to appeal the jurisdictional and dispositional order does not divest us of jurisdiction or otherwise constitute a waiver of appellate review of the notice issue. We respectfully disagree with *Pedro N.* and follow *Marinna J.,* albeit under a different analysis.

In a writ proceeding under rule 39.1B, cognizable issues include "any issue the disposition of which would necessarily include reversal of an order setting a permanent planning hearing." (10 Witkin, Summary of Cal. Law (2002 supp.) Parent and Child, § 638B, p. 782; § 366.26, subd. (*l*).) When the parents have been provided reunification services, as here, writ review is ordinarily limited to whether substantial evidence supports the court's finding the services were adequate. (See, e.g., *In re Misako R.* (1991) 2 Cal.App.4th 538, 545 [3 Cal.Rptr.2d 217]; *In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420 [159 Cal.Rptr. 460].) The parents do not challenge the court's finding they received adequate services. However, the ICWA renders voidable *any* action, notwithstanding the lack of challenge to the substantive merits, taken without the requisite notice to the tribe or Bureau (25 U.S.C. § 1914).[8] Accordingly, the notice issue is a proper subject of review in a rule 39.1B writ proceeding.

---

[8]Title 25 United States Code section 1914 provides: "Any Indian child who is the subject of any action for . . . termination of parental rights under State law, any parent or Indian

Moreover, the notice issue is appropriately before us despite the availability of an earlier appeal. When the court has reason to know Indian children are involved in dependency proceedings, as here, it has the duty to give the requisite notice itself or ensure the social services agency's compliance with the notice requirement. (See *In re Kahlen W., supra,* 233 Cal.App.3d 1414, 1424; *In re Samuel P.* (2002) 99 Cal.App.4th 1259, 1267 [121 Cal.Rptr.2d 820].) In our view, the court's duty is sua sponte, since notice is intended to protect the interests of Indian children and tribes despite the parents' inaction. (*In re Kahlen W., supra,* 233 Cal.App.3d at p. 1425.)

Further, "[n]otice shall be sent whenever there is reason to believe the child may be an Indian child, *and for every hearing thereafter unless and until it is determined that the child is not an Indian child.*" (Rule 1439(f)(5), italics added.) Because the court's duty continues until proper notice is given, an error in not giving notice is also of a continuing nature and may be challenged at any time during the dependency proceedings. In other words, the error under review here is the court's failure to give notice to the three Cherokee Tribes of the 12-month review hearing, which resulted in the scheduling of a selection and implementation hearing under section 366.26. Though delay harms the interests of dependent children in expediency and finality, the parents' inaction should not be allowed to defeat the laudable purposes of the ICWA.

DISPOSITION

The petitions are granted. Let a writ issue directing the juvenile court to vacate its order setting a section 366.26 hearing and to send notice to the three federally recognized Cherokee Tribes. If, after receiving notice, no tribe intervenes, the juvenile court shall reinstate its order. (See *In re Jonathan D.* (2001) 92 Cal.App.4th 105, 111-112 [111 Cal.Rptr.2d 628].) The stay issued on May 28, 2002, will vacate upon issuance of the remittitur. This opinion is final immediately as to this court. (Rule 24(d).)

Nares, Acting P. J., and McDonald, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied January 15, 2003.

---

custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of [25 United States Code] sections 1911, 1912, and 1913 of this title." The notice requirement is found in section 1912(a).