Filed 11/17/14  In re H.M. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re H.M., a Person Coming Under the Juvenile Court Law. | B255753 (Los Angeles County Super. Ct. No. CK89403) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Petitioner and Respondent,<br><br>        v.<br><br>H.S.,<br><br>        Objector and Appellant. | |

APPEAL from orders of the Superior Court of the County of Los Angeles, Tony L. Richardson, Judge.  Reversed and remanded with instructions.

Amy Z. Tobin, under appointment by the Court of Appeal, for Objector and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, Kim Nemoy, Principal Deputy County Counsel for Petitioner and Respondent.

**INTRODUCTION**

H.S. (father) appeals from the juvenile court's orders granting the maternal grandmother of his now three-year old daughter, H.M., legal guardianship, and terminating dependency jurisdiction. Father contends that the orders should be reversed because the Department of Family and Children's Services (Department) failed to comply with the provisions of the Indian Child Welfare Act (ICWA or Act) (25 U.S.C. § 1901, et seq.), and the juvenile court erred in finding the ICWA inapplicable.

Because the Department did not comply with ICWA's notice requirements, we reverse the orders granting the maternal grandmother legal guardianship over H.M., and terminating dependency jurisdiction. We remand this case with directions to the juvenile court to ensure full compliance with ICWA.

**FACTUAL AND PROCEDURAL BACKGROUND**

On August 16, 2011, the juvenile court authorized removal of H.M., and H.M. was placed in foster care. Three days later, the Department filed a petition under Welfare and Institutions Code section 300, subdivisions (a) and (b),[1] as to H.M. based on allegations of domestic violence between father and H.M.'s mother, R.M. (mother); mental health issues, including father's bipolar disorder and schizophrenia and mother's depression and history of suicide attempts; and the parents' substance abuse.

Father admitted to an extensive criminal history and having spent most of his life homeless. Father's criminal history included charges for battery, drug possession, parole violation, and assaulting a peace officer. At the time the Department filed the section 300 petition, father was on parole and, according to his former parole officer, he was not compliant: "'He's a major screw up.'" Father denied any domestic violence between himself and mother. During the pendency of the dependency case, father was oftentimes incarcerated on criminal convictions, had limited contact with H.M., and often had

---

[1]     All statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

temporary restraining orders issued against him to protect H.M. and mother because he made aggressive gestures toward mother and threatened her life.

Father also admitted to having a drug history but had been "clean and sober" for about two years. He conceded that he had a "major drinking problem" in 2009, and at that time was in a nine-month drug treatment program for marijuana and alcohol. Father said that he will have an occasional drink, and feels that it is under control and he "no longer has a drinking problem." Father disclosed that he was diagnosed as being bipolar and schizophrenic, and was taking medication for these issues since 2000. Father, however, said that he was no longer taking the medication because he did not like it.

Attached to the petition was an Indian Child Inquiry Attachment form that had been completed by a children's social worker (CSW) stating that an Indian child inquiry had been made and H.M. "is or may be a member of or eligible for membership in" the "Tuscarora" tribe. The Department's detention report stated that, "The [ICWA] does or may apply." The report stated that mother believed she had "Tuscarora" tribe ancestry and may have been registered with that tribe as a baby, but H.M. was not a currently registered tribe member. Mother completed a Parental Notification of Indian Status form indicating ancestry through the "Tuscaroin" tribe.

At the August 19, 2011, detention hearing, the juvenile court found father to be H.M.'s presumed father and detained H.M. in foster care. The juvenile court ordered the Department to further investigate H.W.'s possible Indian heritage. Father denied having Indian heritage, and the juvenile court found that the ICWA did not apply as to him.

A CWS interviewed mother regarding her alleged Indian heritage, and mother stated that she believes that maternal grandmother's side of the family had "Ramapough Indian, Tuscarora Tribe" heritage. The CWS said that she "found the following information according to Wikipedia: "Rampough Mountain Indians aka Ramapo Mountain Indians aka Ramapouch Lenape Nation; varying degrees, which include Tuscarora."

At the November 7, 2011, jurisdiction hearing, maternal grandmother told the juvenile court that she did not have any Indian ancestry, but maternal grandfather was a

3

member of the Ramapough Mountain Indian tribe, which had an office in Mahwah, New Jersey. She said that "Ramapough" is sometimes spelled "Ramapoo." Maternal grandmother did not know if the tribe was federally recognized, but she understood that they were making efforts to become federally recognized. The juvenile court ordered the Department to further investigate the matter to determine whether notice should be sent to Ramapough Mountain Indian tribe as a federally recognized tribe.

In the Department's November 29, 2011, interim review report, a CSW stated that she was provided with "information from Wikipedia, which notes that the Ramapough Mountain Indian [tribe] is not a federally recognized tribe. Based upon this information, it is the Department's belief that notice does not trigger ICWA in this matter." The report stated that, "The [ICWA] does not apply."

At the December 1, 2011, combined adjudication/disposition hearing, father's counsel informed the juvenile court that father was incarcerated and unavailable to be present. The Department's counsel stated, "At the detention the mother did claim "Ramapoo" (phonetic) or "Ramapoa" (phonetic) Indian ancestry. The last report indicated it's not a federally recognized tribe. I think we have submitted documents asking for recognition, but it's not been recognized by the Bureau of Indian Affairs.[2] [¶] I'm asking the court to find this is not a [ICWA] case." The juvenile court found that the ICWA was inapplicable.

At the December 1, 2011, hearing, the juvenile court adjudicated the petition, declared H.M. a dependent under section 300, subdivision (b), based on father's mental and emotional problems, including having a diagnosis of bipolar disorder, schizophrenia, and auditory and visual hallucinations, his failure to take prescribed medication, his history of substance abuse and current abuse of marijuana and alcohol, mother's unresolved history of drug abuse, and the parents' history of domestic violence. The

---

**2** The record does not otherwise disclose that "documents have [been] submitted asking for" whether "Ramapough" or "Ramapoo" are federally recognized tribes, or that they have "not been recognized by the Bureau of Indian Affairs."

4

juvenile court removed H.M. from parental custody, and ordered family reunification services for both parents.

In February 2012, H.M. was placed with her maternal grandmother, K.S. On May 31, 2012, the juvenile court terminated father's reunification services and continued mother's services for an additional six months. On February 28, 2013, the juvenile court terminated mother's family reunification services and set the matter for a section 366.26 hearing to select and implement a permanent plan for H.M.

In its March 6, 2014, status review report, the Department recommended to the juvenile court that it appoint the grandmother as the legal guardian over H.M. and terminate the dependency case. On March 13, 2014, the juvenile court so ordered. Father timely appealed the orders granting the legal guardianship and terminating the case.

## DISCUSSION

### A.    Motion to Dismiss

The Department filed a motion to dismiss the appeal on the ground that father's notice of appeal was not timely filed, arguing that father should have appealed the juvenile court's December 1, 2011, order finding that the ICWA did not apply. We deny the motion.

Father's failure to timely appeal the juvenile court's order that the ICWA did not apply does not bar our review of ICWA compliance. The court in *In re Marinna J.* (2001) 90 Cal.App.4th 731, stated, "[W]here the notice requirements of the [ICWA] were violated and the parents did not raise that claim in a timely fashion, the waiver doctrine cannot be invoked to bar consideration of the notice error on appeal. Our conclusion is consistent with the protections afforded in the [ICWA] to the interests of Indian tribes." (*Id.* at p. 739; see *In re B.R.* (2009) 176 Cal.App.4th 773, 779 ["the parents' failure to raise [by way of a prior appeal or writ proceeding] the ICWA issue before us [that was the subject of a prior juvenile court proceeding] does not prevent us from considering the

5

issue on the merits"]; *In re Nikki R.* (2003) 106 Cal.App.4th 844, 849 [mother did not waive the issue of ICWA notice compliance by not appealing the judgment arising from the jurisdictional and dispositional hearings because "[t]he notice requirement is designed to protect the interests of the tribe; to the extent a notice defect impairs the tribe's ability to participate, another party cannot waive it"]; and *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 261 ["notice is intended to protect the interests of Indian children and tribes despite the parent's inaction"].)

The ICWA notice provisions are not the parents' to forfeit. (*In re S.E.* (2013) 217 Cal.App.4th 610, 615 ["Mother and Father did not forfeit any deficiencies in the notice requirements by failing to raise them below because the notice provisions are designed in part to protect the potential tribe's interests"]; *In re A.G.* (2012) 204 Cal.App.4th 1390, 1400 ["ICWA notice issues cannot be forfeited for appeal by a parent's failure to raise them in the juvenile court, because it is the tribes' interests, not the parents', that is at stake in dependency proceedings that implicate ICWA"]; *In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1408 [a parent's failure to raise the ICWA's notice requirement in the juvenile court does "not waive the issue on appeal" because the notice requirement is intended, in part, to protect the interests of Indian tribes]; *In re Samuel P.* (2002) 99 Cal.App.4th 1259, 1267 ["[t]he notice requirements serve the interests of the Indian tribes 'irrespective of the position of the parents' and cannot be waived by the parent"].)

The Department cites the recent case of *In re Isaiah W.* (2014) 228 Cal.App.4th 981, for the proposition that a parent is "foreclosed" from challenging the juvenile court's disposition order for failure to comply with the ICWA's notice requirements by not timely appealing that disposition order. After the Department filed its motion to dismiss the appeal, however, *In re Isaiah W.* has been accepted for review by the Supreme Court and is no longer citable. (*In re Isaiah W., supra,* 228 Cal.App.4th 981, review granted Oct. 29, 2014.)

Defendant also relies on *In re Pedro N.* (1995) 35 Cal.App.4th 183, which case held that that because "the mother could have challenged the court's decision to proceed [allegedly without proper ICWA notice] at the dispositional hearing and did not do so,"

6

she was "foreclosed from raising the issue now on appeal from the order terminating her parental rights." (*Id*. at p. 189.) *In re Pedro N*., however, has been criticized and rejected by numerous other courts. (*In re B.R.*, *supra*, 176 Cal.App.4th at p. 779 [rejecting *Pedro N.*]; *In re Nikki R.*, *supra*, 106 Cal.App.4th at p. 849 [same]; *Dwayne P. v. Superior Court*, *supra*, 103 Cal.App.4th at p. 260 ["respectfully disagree[ing] with *Pedro N.*"]; and *In re Marinna J*., *supra*, 90 Cal.App.4th at p. 739 [when the applicable Indian tribe was not sent notice of the juvenile proceedings, "it would be contrary to the terms of the [ICWA] to conclude, as the court did implicitly in *In re Pedro N.*, *supra*, 35 Cal.App.4th 183, that parental inaction could excuse the failure of the juvenile court to ensure that notice under the [ICWA] was provided to the Indian tribe named in the proceeding"]. )

### B. ICWA

#### 1. Applicable Law

"In 1978, Congress passed the Act, which is designed to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children 'in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.'" (*In re Marinna J.*, *supra*, 90 Cal.App.4th at p. 734, quoting 25 U.S.C. § 1902.) Section 224.3, subdivision (a)[3] imposes upon the juvenile court and the Department a continuing duty to inquire if a child in dependency proceedings has or may have Native American ancestry. When the Department knows or has reason to know that a Native American child is

---

**3** Section 224.3, subdivision (a) provides, "The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300, 601, or 602 is to be, or has been, filed is or may be an Indian child in all dependency proceedings and in any juvenile wardship proceedings if the child is at risk of entering foster care or is in foster care."

involved in dependency proceedings, section 224.3, subdivision (c)[4] requires the Department to make further inquiry about the child's ancestry, including interviewing extended family members.

The Act "sets forth the manner in which a tribe may obtain jurisdiction over proceedings involving the custody of an Indian child, and the manner in which a tribe may intervene in state court proceedings involving child custody. When the dependency court has reason to believe a child is an Indian child within the meaning of the Act, notice on a prescribed form must be given to the proper tribe or to the Bureau of Indian Affairs, and the notice must be sent by registered mail, return receipt requested. [Citations.]" (*In re Elizabeth W.* (2004) 120 Cal.App.4th 900, 906.)

"The determination of a child's Indian status is up to the tribe; therefore, the juvenile court needs only a suggestion of Indian ancestry to trigger the notice requirement." (*In re Nikki R.*, *supra*, 106 Cal.App.4th at p. 848; *Dwayne P. v. Superior Court*, *supra*, 103 Cal.App.4th at p. 258.) "'Given the interests protected by the [ICWA], the recommendations of the [federal] guidelines, and the requirements of our court rules, the bar is indeed very low to trigger ICWA notice.' (*In re Antoinette S.*[, *supra*,] 104 Cal.App.4th [at p.] 1408 [129 Cal.Rptr.2d 15] [finding father's suggestion that child 'might' be an Indian child because paternal great-grandparents had unspecified Native American ancestry was enough to trigger notice].)" (*In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165.)

---

[4]     Section 224.3, subdivision (c) provides, "If the court, social worker, or probation officer knows or has reason to know that an Indian child is involved, the social worker or probation officer is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents, Indian custodian, and extended family members to gather the [required] information . . . and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member or eligible for membership in and contacting the tribes and any other person that reasonably can be expected to have information regarding the child's membership status or eligibility."

*2.    Analysis*

The Department correctly "concedes that its investigation was insufficient; especially because mother indicated she may have been registered with the Tuscarora tribe as a baby, and the Tuscarora Nation of New York is one of the tribes listed in the current federal registry and the May 2011 registry that was in place at the time the juvenile court made the December 2011 findings with regard to the ICWA." As set forth above, at the time of filing the petition, the Department stated that H.M. "is or may be a member of or eligible for membership in" the "Tuscarora" tribe, and that mother believed she had "Tuscarora" tribe ancestry and may have been registered with that tribe as a baby. Mother completed a Parental Notification of Indian Status form indicating ancestry through the "Tuscaroin" tribe. Mother also stated that maternal grandmother's side of the family is believed to have "Ramapough Indian, Tuscarora Tribe" heritage. Maternal grandmother said that she did not have Indian ancestry, but maternal grandfather was a member of the Ramapough Mountain Indian tribe, which had an office in Mahwah, New Jersey, and that "Ramapough" is sometimes spelled "Ramapoo." The Department concluded that the ICWA did not apply because information from Wikipedia states that the Ramapough Mountain Indian tribe is not a federally recognized tribe. The juvenile court then found that the ICWA was inapplicable, and without notice to any Indian tribe, ultimately appointed maternal grandmother as H.M.'s legal guardian and terminated the dependency case.

The Department "appreciates and regrets its mistake," but contends, however, that it was harmless and focuses on the father's conduct. The Department argues that the error was harmless because "father either was incarcerated or missing for the duration of the case and made no efforts to participate in the case plan or have any contact with [the Department] or the child, [and therefore] the juvenile court could not have placed the child in his custody, and [the Department] was unable to provide further remedial services." In support of its argument that its failure to adequately investigate whether H.M. was a Native American child was harmless, the Department relies on *In re E.W.*

9

(2009) 170 Cal.App.4th 396; *In re Cheyanne F.* (2008) 164 Cal.App.4th 571;; and *In re S.B.* (2005) 130 Cal.App.4th 1148.

As the Department concedes, the cases upon which it relies to support its contention that the error was harmless hold that deficiencies in the ICWA notice is harmless because "the tribe actually participated in the proceedings or the facts demonstrated that had ICWA notice been perfected, the children would not have been considered Indian." That is, the focus of the harmless error in those cases concerned the interests of the tribe in receiving the notice or not being an applicable tribe, not on the parents' conduct.

As previously stated, the ICWA notice provisions are not the parents' to forfeit (*In re S.E., supra*, 217 Cal.App.4th at p. 615; *In re A.G., supra,* 204 Cal.App.4th at p. 1400; *In re Antoinette S., supra*, 104 Cal.App.4th at p. 1408; *In re Samuel P., supra*, 99 Cal.App.4th at p. 1267), and the ICWA notice requirements are designed to protect the interests of the tribe (*In re Marinna J., supra,* 90 Cal.App.4th at p. 739; *In re B.R., supra,* 176 Cal.App.4th at p. 779; *In re Nikki R., supra,* 106 Cal.App.4th at p. 849; *Dwayne P. v. Superior Court, supra,* 103 Cal.App.4th at p. 261). "Noncompliance with ICWA has been a continuing problem in juvenile dependency proceedings conducted in this state, and, by not adhering to this legal requirement, we do a disservice to those vulnerable minors whose welfare we are statutorily mandated to protect." (*In re I.G.* (2005) 133 Cal.App.4th 1246, 1254-1255.) "'[T]o maintain stability in placements of children in juvenile proceedings, it is preferable to err on the side of giving notice and examining thoroughly whether the juvenile is an Indian child. [Citation.]' [Citation.]" (*Dwayne P. v. Superior Court, supra*, 103 Cal.App.4th at p. 257.) The error here was not harmless.

The Department requests that if we hold there was error we reverse only the order terminating jurisdiction over the dependency case and remand the matter with directions to comply with the ICWA, and that the order appointing legal guardianship over H.M. should remain in place. The Department argues that it is "not necessary" to reverse the guardianship order because if H.M. was later deemed to be of Indian descent, the parents, child, or tribe would have had the opportunity to invalidate the guardianship but if the

child were not deemed an Indian, then the guardianship order would needlessly be vacated.

*In re S.E., supra,* 217 Cal.App.4th 610, the court stated, "Father contends we must reverse the guardianship order and remand the matter to the juvenile court with directions to ensure compliance with the ICWA notice provisions. [The Department] acknowledges error in its oversight in providing notice to the tribes specified by Father and that a limited remand is required, but contends reversal of the guardianship order is not necessary. We disagree. [¶] . . . If notice to the . . . tribes had revealed the child was an Indian child, the provisions of ICWA would have applied at the hearing establishing guardianship as the child's permanent plan. Because the juvenile court applied different standards and provisions other than those in ICWA, its order must be vacated until ICWA notice is provided and the court determines what standard is applicable. [Citation.]" (*Id.* at p. 617.)

Because the Department did not comply with the ICWA's notice provisions, we reverse the orders granting the maternal grandmother legal guardianship over H.M. and terminating dependency jurisdiction. We remand this case with directions to the juvenile court to ensure full compliance with the ICWA.

We are mindful of the affording placement stability to H.M. to the extent possible. On remand, the Department can address with the juvenile court the proper placement of H.M. pending compliance with the ICWA.

11

## DISPOSITION

The orders granting the maternal grandmother legal guardianship over H.M. and terminating dependency jurisdiction are conditionally reversed.  The matter is remanded to the juvenile court to order the Department to provide notice to the tribe as specified in this opinion in accordance with the ICWA.  If after proper ICWA notice, the juvenile court finds the child is an Indian child, the juvenile court shall comply with ICWA, but if the juvenile court finds the child is not an Indian child, the orders establishing guardianship as the permanent plan and terminating dependency jurisdiction shall be reinstated.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.


We concur:


TURNER, P. J.


KRIEGLER, J.

12