Filed 12/18/23  In re W.L. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| In re W.L. et al., Persons Coming Under The Juvenile Court Law. | B328487 |
| _____ | (Los Angeles County Super. Ct. No. 19CCJP07632B-E) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| V.L., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Annabelle G. Cortez, Judge.  Affirmed.

Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

V.L. (mother) appeals from the juvenile court's orders denying her petition under Welfare and Institutions Code section 388 and terminating her parental rights over four of her children.[1]  Mother does not challenge the merits of those orders; instead, she argues the Department failed to comply with the notice requirements under the Indian Child Welfare Act (ICWA) (Welf. & Inst. Code, § 225 et seq.; 25 U.S.C. § 1901 et seq.) by failing to supply more detailed information in the notices.

The Department responds that (1) the notice requirement was never triggered because the Department's investigation yielded no "reason to know" the children were Indian children, and (2) the inclusion of additional information on the notices would have made no difference because on two occasions, both orally and in writing, the Hopi tribe advised DCFS that it had determined that the children were ineligible for membership because the parents were not tribal members.  We affirm.

## FACTUAL AND PROCEDURAL HISTORY

Mother has seven children with two fathers.  Only four of her children are at issue in this appeal.  At the time of the orders denying the 388 petition and terminating parental rights, the children ranged from 10 to 14 years old.  Because mother's appeal only challenges the Department's ICWA efforts regarding her side of the family's Indian ancestry, we recite the ICWA-related

---

[1]    All undesignated statutory references are to the Welfare and Institutions Code.

2

facts only as they concern mother's family.[2]  Also because of the limited nature of the appeal, we do not discuss in detail the facts that led to jurisdiction over the children and the ultimate termination of parental rights.

In November 2019, the Department filed a petition alleging four of mother's children were at risk of serious harm due to mother and her boyfriend's history of domestic violence, mother's substance abuse, and mother's possession of drugs and of guns within reach of her children.[3]

Before it filed the petition, the Department asked mother whether she had Indian ancestry, and she said no.  But on November 27, 2019—the date of the detention hearing—mother filed an ICWA-020 form stating mother "may have Indian ancestry," and adding "unsure, DNA says yes."  At the same hearing, the court ordered the children removed from mother's care and required mother to leave the home she shared with adult daughter Celeste and the children.  Celeste remained the children's caregiver for the duration of the dependency proceedings and repeatedly reaffirmed her desire to adopt them.

In December 2019, mother's other adult daughter, Celena, reported to the Department that mother did not have Indian ancestry and that Celeste would know more.  Celeste in turn reported that she "think[s]" her family is Hopi, but she "d[id]n't

---

[2]     The fathers and their family members the Department interviewed all denied Indian ancestry.

[3]     Because of the number of relatives referred to in this opinion and to avoid confusion, we have identified them by first name or familial description (e.g., "maternal aunt") rather than by initials.

really know," and "mother would have more information." Mother's sister Andrea reported she did not know whether mother had Indian ancestry and also suggested that mother might have more information. Mother told the Department that neither she nor the children were enrolled in a tribe, but that her "maternal grandmother was from Colorado and . . . was part of the Hopi Tribe."[4] Mother identified maternal great grandmother as Annie, but said she had no further information.

Based on mother's report, on December 17, 2019, the Department sent ICWA notices to the Hopi tribe and the Bureau of Indian Affairs (BIA).[5] The Hopi tribe responded by letter in February 2020 stating the children "are not eligible for enrollment with the Hopi Tribe; therefore, [the Hopi] will not be a party to this case." The letter did not ask for any additional information.

After several continuances, on December 4, 2020, the juvenile court sustained the section 300 petition in its entirety. Six months later, in June 2021, the court terminated mother's reunification services and set a permanency planning hearing.

For reasons the record does not reveal, in August 2021, the court ordered the Department "to follow up with" "notice to the Hopi tribe and provide an update to the court" "for .26 purposes."

In February 2022, the court again ordered the Department "to follow up and for .26 purposes reinitiate the ICWA

---

[4] Mother was raised by her grandmother (maternal great grandmother). Maternal great grandmother and both maternal grandparents are deceased.

[5] Mother did not include these notices in the record on appeal.

4

investigation given that mother previously indicated . . . that the maternal [great] grandmother was . . . part of the Hopi tribe." The court ordered the department to "interview appropriate relatives . . . and anyone else who may have information regarding the potential American Indian ancestry," and to "follow up with tribes . . . and provide detailed information regarding [the Department's] efforts to investigate as well as obtain information from the tribes."[6]

In April 2022, the Department spoke with mother's sister, maternal great aunt Elaine. Elaine informed the Department that that "the family 'talked' of possibly having" Hopi ancestry from maternal great grandfather Ruben who was deceased and whose dates of birth and death she did not know. However, Elaine also reported that Ruben was "from Mexico and did not have any American Indian heritage."

In May 2022, the Department sent the Hopi tribe a second set of notices (ICWA-030 forms) to inform it of the upcoming permanency planning hearing for the children. The notice stated the children "[are] or may be eligible for membership" in the Hopi tribe. The forms contain each child's name, date and place of birth, and birth certificate, as well as the full names of mother and the children's respective fathers, and each parent's address and birthdate. The forms also list the names of maternal grandmother, maternal grandfather, and maternal great grandmother, but provide no other information about these

---

[6]     The record does not reveal why the court ordered the Department to reinitiate the ICWA investigation given that the Hopi tribe had already indicated the family's lack of membership or eligibility for membership in February 2020.

5

relatives. For each child and relative, the form lists "Does not apply" in the box provided for "Tribe or band, and location."

The following month, the Department telephoned the Hopi tribe to follow up about the ICWA notices, and was told the ICWA coordinator was not available. The Department reinterviewed adult daughter Celeste about Indian ancestry. Celeste "reiterate[d] that there is no American Indian heritage in her family," and reported "mother [had] told her that she will use any and all means necessary" to prevent Celeste from adopting the children.

In September 2022, the Department contacted the Hopi's ICWA coordinator who requested the children's and parent's names, which the Department provided.

In October 2022, the ICWA coordinator called the Department and explained that "the parents are not enrolled which . . . make[s] all of the children ineligible." The Hopi tribe then sent the Department a letter stating that neither the parents nor the children are enrolled or eligible for enrollment in the Hopi tribe.

At a hearing in February 2023, the court asked mother whether there were "any additional relatives that the Department can reach out to beyond those that [mother has] already identified to the Department," to which mother responded: "No. My mother's deceased now. My grandmother's deceased . . . . That's who would have . . . any kind of bloodline . . . and they're both deceased." The court nonetheless asked mother for maternal great uncle's (Leonard) contact information, and she provided his phone number.

In February of 2023, mother filed a 388 petition in which she requested the return of her children or, in the alternative,

6

reinstatement of reunification services.  She also asked that her visits be unmonitored.

In March 2023, the Department contacted maternal great uncle who stated that his mother Annie talked about his father Ruben being American Indian but that no specific tribe was mentioned.  Leonard stated that he never met Ruben, and that he believed Ruben died in the 1970s or 1980s.  Leonard informed the Department that the only other person who might know anything about Indian ancestry was Elaine, with whom the Department had already spoken.

At a hearing on April 7, 2023, the juvenile court denied mother's section 388 petition and found "there is no reason to know that there's any American Indian ancestry and that the children are Indian children or eligible for enrollment."  Three days later, the juvenile court terminated mother's parental rights and found the children adoptable.

Mother filed a timely notice of appeal.

## DISCUSSION

### 1.    *ICWA Overview*

Mother argues that the Department failed to comply with ICWA because the "notice[s] only contained the names of three relatives, with no other information about them."  The Department responds that (1) no formal notice was required because no information the Department obtained gave it "reason to know" the children were Indian children (§ 224.2, subd. (f)), and (2) any flaw in the notices was harmless because the Hopi's determination was based on the parents' uncontested lack of enrollment with the tribe.

Congress enacted ICWA out of concern that " 'an alarmingly high percentage of Indian families are broken up by

7

the removal, often unwarranted, of their children from them by nontribal public and private agencies.' " (*Haaland v. Brackeen* (2023) 599 U.S. 255, 265.)  Under ICWA and the related California statutes (§§ 224-224.6), a juvenile court and the Department have duties aimed at determining whether a dependent child is an "Indian child."  (§§ 224.2, 224.3.)

An "Indian child" is a child who is (1) "a member of an Indian tribe," or (2) "is eligible for membership in an Indian tribe and is the biological child of a member of an Indian Tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a).)  " 'Conversely, if the child is not a tribe member, and the mother and the biological father are not tribe members, the child simply is not an Indian child.' " (*In re A.A.* (2023) 88 Cal.App.5th 393, 399 (*A.A.*).)

"ICWA does not define ' "member of a tribe" ' or ' "eligible for membership in an Indian tribe." ' " (*A.A.*, *supra*, 88 Cal.App.5th at p. 399.)  Instead, Indian tribes have the sole authority to determine whether a child is a member or is eligible for membership.  (*Ibid.*)  A tribe's determination that a child is not eligible for membership is therefore conclusive.  (*Ibid.*)

The Department and juvenile court have "three distinct duties" under ICWA.  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)  The initial "duty" is "to inquire whether [a] child is, or may be, an Indian child," which the Department discharges by "asking" family members, including "extended family members," and "others who have an interest in the child."  (§ 224.2, subds. (a) & (b).) For its part, the juvenile court is required, "[a]t the first appearance" in a dependency case, to "ask each participant present" "whether the participant knows or has reason to know that the child is an Indian child."  (§ 224.2, subd. (c).)  There

8

appears to be no serious dispute that the Department discharged its initial duty.

The second duty is that of "mak[ing] further inquiry regarding the possible Indian status of the child." (§ 224.2, subd. (e).) This duty is triggered when the Department "has reason to believe that an Indian child is involved" (*ibid*.), and obligates the Department to conduct a "more robust investigation" and to make a " 'meaningful effort' " through further interviews aimed at gathering information, and through contacting the BIA and relevant Indian tribes. (*In re M.M.* (2022) 81 Cal.App.5th 61, 70; *In re K.T.* (2022) 76 Cal.App.5th 732, 744; *In re D.F.* (2020) 55 Cal.App.5th 558, 566.) The Department "has reason to believe that an Indian child is involved" if the Department or the court "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe," including information "indicat[ing]" but not "establish[ing]" the existence of any of the six circumstances satisfying the "reason to know" a child is an Indian child, which are detailed next. (§ 224.2, subd. (e)(1).) "At this stage, contact with a tribe 'shall, at a minimum,' include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of ICWA notice, and 'sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case.' " (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1049.)

The third duty is the duty to notify the relevant Indian tribes. (§ 224.3, subd. (a).) This duty is triggered when the Department or the court "knows or has reason to know . . . that an Indian child is involved" based on the further inquiries

9

performed under the second duty.  (§ 224.3, subd. (a).)  "[R]eason to know a child involved in a proceeding is an Indian child" arises from one of six statutorily defined circumstances.  Only two of these circumstances are conceivably relevant here: "[a] person having an interest in the child . . . informs the court that the child is an Indian child" (§ 224.2, subd. (d)(1)) or "[a]ny participant in the proceeding . . . informs the court that it has discovered information indicating that the child is an Indian child" (*id*., subd. (d)(3)).  We conclude neither actually applies in this case.

In assessing ICWA compliance, we independently review any questions of law, but review the court's ICWA findings for substantial evidence.  (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 254; *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

## 2. *The Requirement of Formal Notice to the Hopi Tribe Was Not Triggered*

The Department does not dispute that its initial inquiry yielded information that required it to conduct a further inquiry because mother's statement about maternal great grandmother's possible Hopi ancestry gave it "reason to believe" the children may have Native American ancestry.  Formal notice to the Indian tribes is only required if information the Department gleans from its further investigation yields a "*reason to know*" a child is an Indian child.  The Department's argument that no notice was required may also suggest that the Department questions whether the notices to the tribe constituted proper notice.

We start our analysis with a review of the ICWA facts that we have previously summarized.  After initially reporting no Indian ancestry, mother filed an ICWA-020 form stating she

10

"may have Indian ancestry." The parties seem to agree that mother's report of her grandmother's possible Hopi ancestry provided a "reason to believe" the children may be Indian children, triggering the Department's duty to conduct a "further inquiry." (See, e.g., *In re T.G.* (2020) 58 Cal.App.5th 275, 292 [mother's and maternal grandmother's statement of possible Indian ancestry triggered duty of further inquiry]; *In re A.M.* (2020) 47 Cal.App.5th 303, 322 [mother's statement she may have Indian ancestry through her grandfather did not trigger ICWA notice requirement, but did require further inquiry].)

As part of its initial inquiry, the Department interviewed mother's adult daughters and maternal aunt, each of whom indicated a lack of knowledge of Indian ancestry and deferred to mother. In its further inquiry, the Department interviewed maternal great aunt, who told the Department "the family 'talked' of possibly having" Hopi ancestry from maternal great grandfather Ruben, then deceased. Maternal great uncle was interviewed and unable to provide any additional information or to identify any individuals who might know more and who had not already been interviewed.

The Department also sent a second set of notices to the Hopi tribe inquiring about tribal membership. Having received no initial response, the Department spoke with the Hopi's ICWA coordinator in September 2022, who requested the children's and parent's names The following month, on October 25, 2023, the ICWA coordinator orally advised DCFS that "the parents are not enrolled which would make all of the children ineligible." Two days later, in an "Updated Information as to ICWA," DCFS advised the juvenile court that "the Hopi Tribe provided a letter stating that the children [names omitted], and the mother and

11

the father [names omitted] are not enrolled in the Hopi Tribe." The tribe did not request any further information; nor did it suggest that the information it had was insufficient to determine whether the parents or the children were enrolled or were eligible for enrollment in the Hopi tribe. Even with this information, the court asked mother whether she had any other relatives the Department might inquire with regarding Indian ancestry, to which mother responded, "No," and explained that her mother and grandmother who might have had more information were both deceased.

None of the information gleaned from mother, her relatives, or from the Hopi tribe revealed any of the circumstances giving rise to a "reason to know" the children were Indian children (§ 224.2, subd. (d)(1)-(6)). The possibility of any such "reason to know" is precluded by the fact that on two occasions the Department provided notice and received a response from the Hopi tribe – both orally and in writing – that the children were not members or eligible to be members of the Hopi tribe because their parents were not members. We conclude that no further ICWA notice was required, and any flaws in the notices the Department sent are of no legal consequence.

### DISPOSITION

The orders are affirmed.

RUBIN, P. J.

WE CONCUR:

MOOR, J.                    KIM, J.

12