Filed 1/21/25  In re A.S. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re A.S. et al., Persons Coming Under the Juvenile Court Law. | B333872<br><br>(Los Angeles County<br> Super. Ct. No. 20LJJP00593) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JUSTIN S.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jennifer W. Baronoff, Commissioner. Conditionally reversed and remanded.

Carol A. Koenig, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

_____

**INTRODUCTION**

In January 2023, A.S. (born February 2017) and her sister E.S. (born August 2021) were declared juvenile dependents and removed from parental custody based on sustained allegations of sexual and substance abuse. (See Welf. & Inst. Code, § 300, subd. (b); *In re A.S. et al.* (June 7, 2024, B328799) [nonpub. opn.] (*In re A.S.*).)[1] At a six-month status review hearing (§ 366.21, subd. (e)), the juvenile court found compliance with reunification services by parents, Samantha S. (mother) and Justin S. (father), was not substantial.

On appeal from the status review hearing, father raises one contention: He avers the Los Angeles County Department of Children and Family Services (DCFS) and court failed to comply with the inquiry provisions of the Indian Child Welfare Act (ICWA, 25 U.S.C. § 1900, et seq.) and related California law, the California Indian Child Welfare Act (Cal-ICWA; Welf. & Inst. Code, § 224 et seq.). DCFS has not filed an appellate brief challenging the merits of this contention. Instead, it has filed a motion to dismiss the appeal as moot, based entirely on a motion to take additional evidence and judicial notice of post-judgment

---

[1]    Subsequent unspecified references to statutes are to the Welfare and Institutions Code.

2

evidence. For the reasons that follow, we deny both motions and conditionally reverse the status review order.

## DISCUSSION

The parties are familiar with the facts and procedural history of this case. We discuss only facts and history relevant to deciding father's appeal.

### A.  Governing Law: ICWA and Cal-ICWA

Federal ICWA regulations were enacted "to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children 'in foster or adoptive homes which will reflect the unique values of Indian culture . . . .'" (*In re Levi U.* (2000) 78 Cal.App.4th 191, 195, quoting 25 U.S.C. § 1902.) ICWA recognizes ""'the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents."' [Citation.]." (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 253.)

"ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes and does not prohibit states from establishing higher standards. (25 U.S.C. § 1921; 25 C.F.R. § 23.106 (2024); see also *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 783.) Indeed, ICWA expressly yields to state laws that provide 'a higher standard of protection to the rights of the parent or Indian custodian of an Indian child . . . .' (25 U.S.C. § 1921; § 224, subd. (d).)" (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1129 (*Dezi C.*).)

"After the federal ICWA regulations were adopted in 2016, California made conforming amendments to Cal-ICWA, including portions of the Welfare and Institutions Code related to ICWA inquiry and notice requirements." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1131.) In relevant part, Cal-ICWA imposes on agencies and juvenile courts "'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child. (§ 224.2, subd. (a).)" (*Id.* at pp. 1131–1132; accord, *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1099 (*Kenneth D.*).) This duty begins with initial contact and continues throughout dependency, including placement of the child into temporary custody of a county welfare department. (*Dezi C.*, *supra*, at p. 1132.)

The duty of inquiry "'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.'" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1132, quoting § 224.2, subd. (a).) "Extended family member" refers to any "person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see also § 224.1, subd. (c) [adopting ICWA definition].)

Whenever the child welfare agency "has 'reason to believe' that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required. (§ 224.2, subd. (e); see also [Cal. Rules of Court,] rule 5.481(a)(4).) The required further inquiry includes (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian

4

Affairs (BIA) and State Department of Social Services; and (3) contacting tribes the child may be affiliated with and anyone else that might have information regarding the child's membership or eligibility in a tribe. (§ 224.2, subd. (e)(2)(A)–(C).)" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1132, fn. omitted.) Contact with a tribe "'shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of [ICWA] notices,'" and "'sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case.'" (§ 224.2, subd. (e)(2)(C).) Sharing information with tribes "at this inquiry stage is distinct from formal ICWA notice, which requires a 'reason to know'—rather than a 'reason to believe'—that the child is an Indian child." (*Dezi C.*, *supra*, at p. 1133.)

The juvenile court may find "an agency's inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child, so ICWA does not apply. (§ 224.2, subd. (i)(2).)" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134.) Even after making this finding, the agency and court have a continuing duty under ICWA, and the court "'shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry . . . .' (§ 224.2, subd. (i)(2).)" (*Ibid.*; accord, *Kenneth D.*, *supra*, 16 Cal.5th at p. 1100.) The juvenile court's factual finding ICWA "does not apply is 'subject to reversal based on sufficiency of the evidence.' (§ 224.2, subd. (i)(2).)" (*Dezi C.*, *supra*, at p. 1134.)

## B.    Relevant Background

At the commencement of this case, DCFS filed several form documents (Indian Child Inquiry Attachment [ICWA-010 form]; Parental Notification of Indian Status [ICWA-020 form]) reporting no reason to believe the children were or may be Indian children.  In December 2022, parents denied having Indian heritage.  At the January 2023 detention hearing, the court found ICWA did not apply.  Noting, however, DCFS's "duty of further inquiry and an obligation to investigate any claims of [Indian] ancestry throughout the case," the court ordered interviews of maternal and paternal relatives for Indian ancestry.

In mid-January 2023, parents again denied having Indian ancestry.  During the adjudication hearing later that month, the court asked maternal grandmother, Anita G., about her Indian heritage.  Anita G. indicated she had "some" Cherokee heritage but was unsure of the details.  She did not know if she had relatives living on a reservation or who received funding from any tribe, though she thought her mother (maternal great-grandmother) might have additional information.[2]  The court ordered DCFS to follow up with maternal great-grandmother and all other known relatives and to notify the Cherokee tribes, BIA, and Secretary of the Interior.

In February 2023, DCFS interviewed Anita G. and maternal great-grandmother, Della D.  Each relative reported possible Cherokee ancestry through various relatives and provided DCFS their known information.  With the exception of maternal great-grandfather (Gary D.), every relative identified

---

[2]    At the same hearing, the court noted the presence of paternal grandmother, Claudia A.  The court did not inquire of Claudia A.'s heritage.

was deceased. The same month, DCFS attempted unsuccessfully to telephonically interview paternal uncle, Christopher L.

The same month, DCFS sent ICWA Notices (ICWA-030 forms) with biographical information obtained from maternal relatives to the Cherokee Nation, the United Keetoowah Tribe, the Eastern Band of Cherokee Indians, the BIA, and the Secretary of the Interior. The notices informed the tribes each child was "or may be eligible for membership."[3] As of March 2023, the United Keetowah Band of Cherokee Indians and Cherokee Nation informed DCFS the children were not members or eligible for membership.[4]

At the April 2023 disposition hearing, the court stated, "[W]e can go forward with disposition, but we will set an I.C.W.A. progress [hearing] for any responses from the tribes and interviews with the paternal relatives." It does not appear the court scheduled such hearing.

DCFS filed a status review report in October 2023, reporting on additional interviews with maternal relatives. Anita G. denied having any Indian ancestry, while Della D. reported possible heritage through her own great-great-grandmother (Minnie T.).[5]

---

[3] The notices listed biographical information for mother, father, maternal grandmother (Anita G.), maternal grandfather (Gregory G.), maternal great-grandparents (Della D. and Gary D.), and four other maternal relatives. The notices listed paternal grandmother's name (Claudia A.) but provided no other information on paternal relatives.

[4] The response by United Keetowah Band of Cherokee Indians reported on E.S.'s eligibility status and not A.S.'s.

[5] The ICWA notices previously sent to the three tribes identified Minnie T. and listed her birthplace and birthday.

7

On November 30, 2023, the court held a six-month status review hearing (§ 366.21, subd. (e)), finding parents were not in substantial compliance with their case plan. The court continued removal and reunification services and set the matter for a further status review hearing. The court made no ICWA findings or orders. Father timely appealed from the order issued after the status review hearing.

## C. Analysis

Father contends DCFS's inquiry at the time of the status review hearing was insufficient because DCFS did not interview "available paternal extended family members who may have been able to offer meaningful information about Indian ancestry." In support, he identifies paternal aunt (Alyssa R.) and paternal aunt or great aunt (Nancy A.) as persons with whom DCFS had contact or contact information.

DCFS has not filed a respondent's brief in this case. It has instead filed: (1) a motion to take additional evidence on appeal or judicial notice of post-judgment evidence; (2) a motion to dismiss the appeal as moot; and (3) a letter brief purporting to confirm its "further inquiry into the children's possible [Indian] ancestry." The four documents attached to DCFS's motion to take additional evidence appear to be reports on its further inquiry into Indian ancestry or court orders requiring DCFS's updated compliance.

Father opposes both motions filed in this case. Relying on the recent decisions in *Dezi C.* and *Kenneth D.*, father argues we may not take "judicial notice of evidence not presented to the trial court absent exceptional circumstances" not present here. (Citing *Kenneth D.*, *supra*, 16 Cal.5th at p. 1106.) We agree with father.

8

In *Kenneth D.*, our Supreme Court held, "absent exceptional circumstances, a reviewing court may not generally consider postjudgment evidence to conclude [ICWA inquiry error] was harmless. The sufficiency of an ICWA inquiry must generally be determined by the juvenile court in the first instance." (*Kenneth D.*, *supra*, 16 Cal.5th at p. 1094.) The facts and issue in this case resemble those in *Kenneth D.*

In that case, as in this one, the child welfare department acknowledged its prior failure to adequately inquire into father's possible Indian heritage "but argue[d] any failure of inquiry at the trial court level was cured by its later, postjudgment interview" of additional relatives. (*Kenneth D.*, *supra*, 16 Cal.5th at p. 1100.) In rejecting this argument, the Supreme Court stated:

> "Ordinarily, appellate courts review a trial court's judgment based on the record as it existed when the trial court ruled. [Citation.] It is ultimately within the purview of the juvenile court to make determinations of credibility and assessments of adequacy because it is uniquely positioned to reach these conclusions based on its familiarity with the case and those involved. The department's assertion that its postjudgment report rendered any prior failure of inquiry harmless 'necessarily requires that we treat the factual assertions therein as undisputed, which we cannot do' because, absent exceptional circumstances, '[t]his type of factfinding is precisely what must occur in the juvenile court in the first instance [citation], where additional and possibly competing evidence may be offered; and the court, on a more fully developed record, will assess weight and credibility as appropriate, and make its factual findings.' [Citation.]" (*Kenneth D.*, *supra*, 16 Cal.5th

9

at p. 1101, quoting *In re E.C.* (2022) 85 Cal.App.5th 123, 150.)

With these principles in mind, the *Kenneth D.* Court discussed the postjudgment evidence offered by the department, finding "the nature of this evidence only highlights why it should be presented to the juvenile court rather than for the first time on appeal." (*Kenneth D.*, *supra*, 16 Cal.5th at p. 1105 [memorandum detailed new interview in which relative "was unaware of any Native American heritage and assumed her DNA test results [suggesting Indian heritage] were due to her Mexican ancestry"].) The Court concluded the juvenile court was the appropriate forum in which to review this type of potentially disputed evidence and make a finding in the first instance as to "whether the department's efforts constituted 'proper and adequate further inquiry and due diligence. . . .'" (*Id.* at pp. 1105–1106, quoting § 224.2, subd. (i)(2).)

The postjudgment evidence offered in this case purports to describe DCFS's further inquiries of relatives and two court orders requiring additional compliance. The evidence does not include a judicial determination on the adequacy of this postjudgment inquiry. While we """"may take judicial notice of the existence of each document in a court file, [we] can only take judicial notice of the truth of facts asserted in documents such as orders, findings of fact and conclusions of law, and judgments.""" [Citation.]" (*Kenneth D.*, *supra*, 16 Cal.5th at p. 1106.) Until the juvenile court makes a determination on the adequacy of DCFS's postjudgment inquiry in the first instance, we cannot treat the factual assertions in the postjudgment evidence presented as undisputed or determinative on the issue of ICWA compliance. (*Ibid.*; accord, conc. opn., Groban, J., *Kenneth D.*, *supra*, at

pp. 1108–1110 [agreeing "the department's postjudgment memorandum [did] not constitute a proper use of judicial notice"].)

We thus conclude the requisite inquiry into the children's Indian ancestry at the time of the status review hearing from which father appealed "did not satisfy statutory mandates." (*Kenneth D.*, *supra*, 16 Cal.5th at p. 1107.) As DCFS has not identified any exceptional circumstances in this case, we further conclude we may not consider postjudgment evidence of its inquiry to deem father's appeal moot. We deny DCFS's motions to dismiss the appeal as moot and take additional evidence on appeal, conditionally reverse the juvenile court's status review order, and remand the matter for a proper inquiry and further proceedings.

## DISPOSITION

The six-month status review order is conditionally reversed.  The matter is remanded for compliance with the inquiry and notice requirements of sections 224.2 and 224.3.  If on remand the juvenile court finds a proper and adequate inquiry, conducted with due diligence, has taken place and there is no reason to know either child is an Indian child, making ICWA inapplicable, the court shall reinstate the six-month status review order.  If the juvenile court concludes ICWA applies, it shall proceed in conformity with ICWA and Cal-ICWA provisions.


MORI, J

We concur:



CURREY, P. J.



COLLINS, J.

12